THOMAS HAMMOND, JOS. G. NESBITT and WESLEY
DYCHE *vs.* JAMES MORRISON'S Lessee.

*Construction of section 2 of Act of 1781, ch. 20, and
sections 10 and 13 of Act of 1788, ch. 44—Eject-
ment by Tenant-in-common against a Co-tenant.*

The Act of 1781, ch. 20, appropriated certain unoccupied lands in Wash-
ington County, west of Fort Cumberland, to the soldiers of the Revolu-
tion.   On survey it was ascertained that there were 4,165 lots unoccu-
pied, 636 occupied, and sundry tracts patented in the region indicated
by the Act.   The Act of 1788, ch. 44, directed that 2,575 lots—that
being the number of claimants—within certain described lines should be
distributed by lot to the soldiers   Section 10 provided that the remain-
der of the lots should be sold for any kind of specie certificates ; and by
section 13 it was enacted that any of the said lands not thereinbefore
appropriated, and any lands in the State, then vacant, should be liable
to be taken up as usual on warrant.   A tract of land situated west of
Fort Cumberland, in Washington County, was surveyed under a com-
mon warrant dated February 4th, 1789, and patented in 1803 to M.
In 1814 two military lots were patented to J.   These lots were not with-
in the lines described in the Act of 1788, and were found to cover in part
the tract patented to M.   HELD :

1st. That section 10 of the Act of 1788, ch. 44, applies only to such of the
lots situated within the lines described in that Act as might remain after
the soldiers had received their allotment, and section 13 referred to all
lots not contained within those lines, notwithstanding they were west of
Fort Cumberland.

2d. That the tract patented to M being outside of the lines of the Act of
1788, although west of Fort Cumberland, could be patented to M under
section 13 of that Act; and, being so patented, the State could convey
no title in it by sale and patent to J in 1814.

The possession of one tenant-in-common being in law the possession of all
the co-tenants, a tenant-in-common cannot bring *ejectment* against his
co-tenant unless there has been an *ouster*.   The *ouster* need not be
accompanied by positive force, but may be established by acts and decla-
rations brought home to the knowledge of the co-tenant.

APPEAL from the Circuit Court for Allegany County.

This was an *ejectment* by the appellee against the appellants,
for a tract of land called " The Trap," which was patented to

Nathaniel Beall Magruder, on the 27th of May, 1803.   It was surveyed under a common warrant, dated the 4th day of February, 1789.

The patentee on the 15th of August, 1803, conveyed "The Trap" to Adam Sigler and James Morrison.

James Morrison, one of the grantees of Magruder, devised all his real estate to his son, John Morrison, in fee simple, and died about the year 1824, and his son and devisee died about the year 1829, leaving a widow, Theodosia, who died in 1840, and two children, John and James Morrison, his heirs at law.   The title of James Morrison, the grantee of Magruder, thus came to James Morrison, the grand-son, who is the lessor of the plaintiff.

The defendants took defence for military lots 3905 and 3907, as located on the plats in the cause, except parts of lot 3905.

They relied on a patent to Thomas Johnson, dated the 21st day of March, 1814, for said lots 3905 and 3907.   The title of Johnson to said lots had come by regular conveyances to Thomas Hammond, one of the appellants.

The appellee offered evidence that James Morrison, the grantee of Magruder, lived on the land 50 to 60 years ago, enclosed a portion of it, claimed the whole of it as his own, and drove trespassers from it; that John Morrison, his son, and his son's widow and children, had continued to hold and occupy it as their own exclusively down to the present time; and that Adam Sigler, the other grantee in Magruder's deed, never exercised any acts of ownership over the land in controversy.

The appellants then offered a deed from Adam Sigler to James Murphy for his interest in "The Trap" and other lands, dated April 17th, 1827.

The appellee then proved that Murphy lived on the Murphy farm, in the neighborhood of "The Trap," and died about 1847 or 1848; that he left several children, all of age, and that one of them, George, rented "The Trap" of the

Morrisons, and paid them rent for several years after the death of his father, and left on notice to quit.

*Exception:* The plaintiff offered the following prayers:

1st. That if the jury find from the evidence in the cause, that the patent to Nathaniel Beall Magruder, offered in evidence, was issued, and that the deed from him to Adam Sigler and James Morrison was executed and delivered, that such patent and deed vested in said James Morrison an undivided moiety of said tract called "The Trap," and if they further find that the title of said James Morrison to said tract was devised by him, to his son, John, and that the right and title of said devisee, has been transmitted by conveyances and descent to the lessor of the plaintiff, then the plaintiff is entitled to recover the said undivided moiety in this cause.

2d. That if the jury find from the evidence in the cause the facts stated in the first prayer, and also that James Morrison and those claiming under him, were in exclusive, continuous and adverse possession of said tract of land called "The Trap," for twenty years previous to the commencement of this suit, claiming title to the whole of said tract, and that Adam Sigler, James Murphy, and the heirs at law of said Murphy, lived close to said tract during the time they were so in possession, and knew that they were so in possession and claiming adversely, then the plaintiff is entitled to recover the whole of said tract.

3d. That if the jury find the facts stated in the first prayer, and also that James Morrison was in possession of the tract called "The Trap," in his lifetime, and for eight or ten years before his death; that he devised it by will to his son, John, and died about the year 1824, and that his son, John, and those claiming under him, including the lessor of the plaintiff, have had possession of it from the time of the death of said James till within the last five years, and that said James and his son, John, and those claiming under them, including the lessor of the plaintiff, had part of said tract enclosed and cul-

tivated it during that time, and claimed title to the whole of it adversely, and had the exclusive possession of it during all that time, and that Adam Sigler, James Murphy, and the heirs at law of said Murphy, knew of said adverse claim of ownership and possession during all that time, then the plaintiff is entitled to recover the whole of said tract.

And the defendants prayed the Court to instruct the jury, as follows:

1st. That if they shall believe from the evidence in this case, that a common warrant was issued on the 4th day of February, 1789, and that a survey thereunder was made, a certificate returned on the 15th day of July, 1789, and that a patent thereon was issued on the 27th day of May, 1803, by the name of "The Trap," to Nathaniel B. Magruder; and if the jury shall further find, that said warrant was located on said ground embraced on the lines of lots numbers 3905 and 3907, or either or both of them, that the certificate and the patent issued thereon were void, and cannot be received in evidence for any purpose.

2d. That if they shall believe the facts set forth in the first prayer, and shall further find, that the deed from Nathaniel Beall Magruder to Adam Sigler and James Morrison, dated 15th of August, 1803, as offered in evidence, was for the same land contained in the said patent for "The Trap," then the said deed conveys no title, and cannot be offered in evidence for any purpose.

3d. If the jury shall believe the facts stated in the aforegoing prayers, and that the said James Morrison, and those claiming under him, took possession and held the said land under the said titles, that then the said James Morrison was a mere trespasser, and not entitled to hold any portion of the said land called "The Trap," except what he, and those claiming under him, have held by adverse, exclusive and continuous possession by enclosure for over twenty years prior to the bringing of this action.

Hammond, *et al. vs.* Morrison's Lessee.

4th. That there is no evidence in the cause of any adverse, exclusive and continuous possession by actual enclosure of any portion of the tract called " The Trap," except those portions embraced within the possessions Nos. 1, 2 and 3, and which are not in controversy in the cause.

The Court granted the plaintiff's prayers and rejected those of the defendants. To this ruling the defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before Bartol, C. J., Stewart, Brent, Maulsby, Grason, Miller and Robinson, J.

*Thos. J. McKaig,* for the appellants.

*Wm. Walsh* and *J. H. Gordon,* for the appellee.

Grason, J., delivered the opinion of the Court.

The first question presented upon this appeal, arises upon the construction of the 2d section of the Act of 1781, chapter 20, and the 10th and 13th sections of the Act of 1788, chapter 44. The 2d section of the Act of 1781 is rather obscure in its phraseology, but it appropriated all the lands within the State, in Washington county, westward of Fort Cumberland, to discharge the engagement of the State to the officers and soldiers of the Revolution, and, after the completion of that engagement, to the use of the public, as the General Assembly might direct, excepting, however, the lands on which locations had been made by special warrant, or actual surveys under common warrants, (which warrants and surveys, and the rights resulting therefrom, were, at the time of the passage of the Act, *bona fide* the property of citizens of the State of Maryland, or some one of the United States,) and for which lands the composition money had been paid ; with a proviso, however, that the lands so located, sur-

veyed and paid for should not be patented without the further order of the Legislature. At the time of the passage of this Act, the number of the officers and soldiers who were entitled to lands, had not been ascertained. Under a resolution of the Legislature, passed in 1787, the lands described in the Act of 1781, were surveyed and laid off into lots of fifty acres each, a plat of which was returned, as required by the resolution, by which it appeared that there were four thousand one hundred and sixty-five lots, besides sundry tracts which had then been patented, and that there were six hundred and thirty-six lots improved and cultivated, and settled by three hundred and twenty-three families. The Act of 1788, chapter 44, was afterwards passed, giving a preference to those settlers to the lots, so occupied by them, upon their making certain payments therefor. Then, after reciting that, from the most accurate account that could be rendered by the Auditor General, there were about two thousand, four hundred and seventy-five soldiers, and one hundred officers entitled to lands under the several Acts of the Legislature theretofore passed, the Act of 1788 provided, that twenty-five hundred and seventy-five of the lots which had been surveyed, and which were situated within certain lines particularly described in the Act of Assembly, should be distributed by lot among the soldiers and officers and their legal representatives, by the commissioners to be thereafter appointed by the Governor and Council, and the 6th section provided that certain of the remaining lots should be distributed by lot among the officers of the Maryland line. Section 10 provided that the remainder of the lots be sold for any kind of specie certificates of this State, to be paid at the time of the sale.

By section 13, it was enacted, that any of said lands not hereinbefore appropriated, and any other lands in this State then vacant, and to affect which no warrant had issued, should be liable to be taken up in the usual manner by warrant.

It was contended by the counsel of the appellants, that all the lots west of Fort Cumberland had been appropriated by the Act of 1781 to a particular object, and that they could not be disposed of in any manner other than by a sale, according to the direction of the 10th section of the Act of 1788. We are satisfied that that section applies only to such of the lots situated within the lines described in the Act, as might remain after the officers and soldiers had received their allotment, and that the 13th section referred to all other lots not contained within the lines mentioned and described in the Act of 1788, notwithstanding they were situated west of Fort Cumberland. This construction gives effect to both the 10th and 13th sections, reconciles what might seem to be inconsistent in them, and coincides with that which has been given to them in the Landholder's Assistant, at page 315. The lots, in controversy in this case, are not of the number included within the lines described in the Act of 1788, and are no part of the twenty-five hundred and seventy-five appropriated by that Act, and are, therefore, not within the provision of its 10th section. They were, consequently, liable to be taken up, under the 13th section, under warrant, as other vacant land. A patent for these two lots having been granted to Nathaniel Beall Magruder in 1803, the title to them was vested in him, and, therefore, the State could convey no title in them by a sale and patent to Thomas Johnson in 1814. The first prayer of the appellee was, therefore, properly granted, and it follows as a consequence, that the first, second and third prayers of the appellants were properly rejected. But it was also contended, that Adam Sigler took a moiety of "The Trap," under the deed from the patentee, to him and Morrison, and that said Sigler, and those claiming under him, were tenants-in-common with the appellee, and that, therefore, there could be no recovery of a moiety of the land in dispute, without proof of an actual ouster of his co-tenants by the appellee, and an adverse possession thereafter of twenty years. It is true that the possession of one tenant-in-common

is, in contemplation of law, the possession of all his co-tenants, unless there be an ouster of them, and in that event only can one tenant-in-common maintain an action of *ejectment* against his co-tenants. The ouster need not be accompanied by positive force, but must be established by acts or declarations brought home to the knowledge of the co-tenant. *Van Bibber's Lessee vs. Frazier, et al.,* 17 *Md.,* 451. There was proof in this case to show that the appellee, and those under whom he claimed, always held the exclusive possession of " The Trap," claimed it as their own, received the rents and profits, and at one time rented it to Murphy, a son of James Murphy, to whom Adam Sigler had conveyed his interest in the Trap, and that he left the property upon receiving notice to quit, and that during the whole of this time the parties under whom the appellants claim, were living in the immediate vicinity of " The Trap." This was evidence of such a character that the jury might, upon it, find an ouster by James Morrison, or those claiming under him, of their co-tenants, and there was, therefore, no error in granting the appellee's second and third prayers, which required the jury to find, from the evidence in the cause, that Sigler, James Murphy and his heirs at law, knew of the adverse possession and claim of exclusive ownership of " The Trap," by James Morrison, and those claiming under him, as a pre-requisite to the finding of a verdict for the appellee.

As the Morrisons were in possession of a part of " The Trap," by actual inclosures, claiming title to the whole under the patent to Magruder and the subsequent deed from him, both of which were in evidence in the cause, it was not necessary that the jury should find that the whole tract had been held by actual enclosure to entitle the appellee to recover, and, therefore, the Court below properly refused to grant the fourth prayer of the appellants, and its judgment must be affirmed.

*Judgment affirmed.*