609 P.2d 1084

Harrison A. MAKEEVER and Ruby K. Makeever; Richard S. Schuman and Jean C. Schuman, Appellants,

v.

Dr. William H. LYLE and Mrs. William H. Lyle, Appellees.

No. 1 CA–CIV 4111.

Court of Appeals of Arizona, Division 1, Department C.

March 4, 1980.

Rehearing Denied April 7, 1980.

Review Denied April 22, 1980.

Bryne, Bradshaw, Ellsworth, Benesch & Thode by Thomas A. Thode, Yuma, for appellants.

Thaddeus G. Baker, P.C. by Thaddeus G. Baker, Yuma, for appellees.

## OPINION

HAIRE, Judge.

The issues raised on this appeal require a consideration of the rights acquired by a condominium apartment owner in the "general common elements" when a parcel of real property has been submitted to a horizontal property regime pursuant to A.R.S. §§ 33–551 et seq.

Each of the appellants own an apartment unit in the Laguna West Horizontal Property Regime, a condominium development consisting of 16 separate units located in Yuma, Arizona. Laguna West is not a vertical development, rather all the apartments

are built at ground level in blocks of four adjacent to the Yuma Golf and Country Club. Within each block each apartment shares at least one common wall with a neighboring apartment. Only four of the apartments have two stories and each of the apartments has its own two-car carport immediately adjacent to its entrance. Surrounding the apartments is an unfenced area, and the units share a common bathhouse and swimming pool.

The circumstances giving rise to this litigation commenced in December 1976 when the appellees, Dr. and Mrs. William H. Lyle, decided to purchase apartment unit 12. This was a single-story apartment, and Dr. Lyle wanted to construct a second story consisting of two bedrooms, a bath and a den, and also add a basement workshop immediately underneath his carport. He subsequently consummated the purchase of unit 12, and after receiving the approval of ten of the 16 unit owners, started construction.[1]

Appellants then commenced an action in Yuma County Superior Court seeking declaratory relief and also seeking to enjoin Dr. Lyle from proceeding with the construction. Essentially, appellants contended that Dr. Lyle's contemplated construction of the second floor and basement workshop would constitute a wrongful appropriation or taking for his sole and exclusive use and control of cubic space belonging in common to all the apartment owners, and that such a taking could not be accomplished without the unanimous consent of all the unit owners. On the other hand, it was Dr. Lyle's contention that since there was no specific provision in the Laguna West bylaws governing the contemplated construction, the only approval necessary was by a majority of the owners.

The trial judge adopted Dr. Lyle's position, refused to enjoin the contemplated construction, and awarded Dr. Lyle judgment for attorney's fees against appellants. For the reasons set forth herein, we reverse.

The Arizona statutes governing and authorizing horizontal property regimes (condominiums) were first enacted in 1962. *See* A.R.S. §§ 33–551 through 561. In general these statutes authorize an owner to submit a parcel of real property to a horizontal property regime by filing a declaration of submission, which must contain certain declarations. *See* A.R.S. §§ 33–552 and 33–553. The general concept involves a scheme of real property ownership whereby an owner individually owns a horizontal layer of "cubic content space"[2] which is subject to his exclusive control, A.R.S. § 33–553(3), together with an undivided fractional or percentage interest held in common with other unit owners in the "general common elements". Among other things, the general common elements include the land, the foundations, floors, the exterior walls of each apartment, ceilings and roofs, and in general all that portion of the property other than that which is subject to the exclusive ownership and control of an individual apartment owner. A.R.S. § 33–551(6). The fractional interest of the apartment owner in the general common elements is appurtenant to each apartment, A.R.S. § 33–558, and the ownership of each individual apartment and the appurtenant interest in the general common elements is "vested as . . . any separate parcel of real property is or may be under the laws of this state . . .." subject to certain limitations on alienation and partition set forth in the statutes. A.R.S. § 33–557.

Although some states have enacted extensive statutory provisions specifying the uses which may be made of the general common elements and the manner or means by which the owners may govern or control

---

1. Initially, and apparently before he consummated the purchase, Dr. Lyle obtained the approval of 14 of the owners, subject to final approval of plans and specifications by the board of directors. Thereafter, due to conflicting opinions concerning the legality of the proposed construction, the board of directors failed to give their approval.

2. *E. g.*, the cubic content space of his apartment, carport or garage, or any other area subject to his exclusive control.

such uses,[3] the sole Arizona statutory provision of this nature is found in A.R.S. § 33–561 A:

"A. The council of co-owners[4] shall be required to make provisions for maintenance of common elements, limited common elements where applicable, assessment of expenses, payment of losses, division of profits, disposition of hazard insurance proceeds and similar matters and shall be required to adopt bylaws, rules and regulations." (Footnote added).

While there was some question presented in the trial court as to whether valid bylaws had ever been adopted for Laguna West as required by A.R.S. § 33–561 A, the trial judge found that the bylaws were adopted in compliance with the statute. That finding has not been challenged on appeal.[5]

Counsel for appellees cite *Hidden Harbour Estates v. Norman*, 309 So.2d 180, 181–182 (Fla.App. 1975) for the following:

"It appears to us that inherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. *Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.*" (Emphasis added).

▮ We agree with this concept. *See generally* 31 C.J.S. *Estates* § 150 (1979). However, even in "a little democratic sub

society", there must be some basic sources from which the principles governing the democratic sub society are derived. Here the sources arise from the statutes (A.R.S. §§ 33–551 through 33–561), the Declaration of Submission of Laguna West to a Horizontal Property Regime[6] and the above referred-to bylaws. We have previously quoted herein the only Arizona statutory provision directly setting forth powers conferred on the council of co-owners. *See* A.R.S. § 33–561. Without repeating the specific language of that statute, it requires that the council of co-owners arrange for the maintenance of the common elements, the assessment of expenses relating thereto, the disposition of hazard insurance proceeds, "and similar matters". Nothing contained in the statute can be remotely interpreted as conferring upon a majority of the council of co-owners the right to convert a portion of the general common elements to the exclusive use and control, and thereby to the private ownership, of an individual apartment owner.

▮ Examining next the declaration of submission of the property to the horizontal property regime concept, we note that the declaration does not contain any provision directly bearing on the question before this Court, although it does, as required by A.R.S. § 33–553 provide the descriptions and means for determining the "cubic content space" of the property which is owned by the apartment owner individually, and that portion of the property which is owned in common, the "general common elements". Although the declaration of submission presents some ambiguity as to the proper classification of the cubic content space of the carports,[7] there can be no ques-

---

3. *See, e. g.*, Fla.Stat.Ann. §§ 718.103, 718.107, 718.108, 718.110, 718.113 and 718.123.

4. The "council of co-owners" is a reference to all the owners of the condominium units. *See* A.R.S. § 33–551(5).

5. The full title of the bylaws is "Declaration of Restrictions and Bylaws and Rules and Regulations of Laguna West", recorded in Docket 546, commencing at Page 392, Records of Yuma County, Arizona.

6. The declaration of submission is recorded in Docket 546, commencing at Pages 381 and 633, Records of Yuma County, Arizona.

7. The provisions of the declaration of submission were ambiguous as to whether the cubic content space of the carport was part of the space owned individually by each apartment owner, as opposed to being a part of the gener-

tion but that the land and space which were to be occupied by Dr. Lyle's proposed basement and second floor addition were part of the general common elements owned in common by all the apartment owners.

Before considering the provisions of the bylaws, which constitute the third possible source of powers to be exercised by the council of co-owners, it is important to note that the use by Dr. Lyle of the contemplated second floor and basement was not a use in common with the other owners of Laguna West. Rather, by the very nature of the contemplated construction, the use necessarily would be in the nature of a taking of that portion of the general common elements and converting it to the exclusive use and control of Dr. Lyle as an individual owner. The trial court, apparently recognizing that by reason of the proposed construction, a portion of the general common elements would be converted to Dr. Lyle's individual ownership, directed in ·its judgment that the declaration of submission be amended to reflect an additional amount of cubic content space for unit 12, belonging to Dr. Lyle.

■ As previously indicated, appellees and the trial judge have recognized that there is no specific bylaw provision which would authorize appellees to do this. Rather, they rely upon a general provision in the bylaws, Article III, Section 1, as follows:

"*Section 1.* Council Responsibilities. The owners of units will constitute the Council of owners (hereinafter referred to as 'Council') and shall have the responsibility of administering the property, approving the annual budget, delegating such duties as it elects to agents designated for such purpose, establishing and collecting monthly assessments, maintaining fire and other hazard and liability insurance on the entire property, disbursement of fire and other hazard insurance and

other proceeds for repair or reconstruction of any portion of the property. *Except as otherwise provided, decisions and resolutions of the Council shall require the approval of a majority of a quorum of owners.*" (Emphasis added).

Appellees interpret the emphasized portion of Article III, Section 1 as constituting an unlimited grant of power to the council of co-owners to consider any question which might conceivably be presented to the council, and then to decide that question by majority vote, except as otherwise specifically required in the bylaws. We disagree. In our opinion the correct interpretation of the emphasized portion of Article III, Section 1, is that it does not constitute a grant of power expanding the area of questions which might be decided, but rather merely allows the approval by a majority vote of questions which are *properly* before the council, *i. e.*, questions which the council has been given the authority to decide.[8]

■ This brings us to the heart of the issue presented here. In the absence of specific authorization in the statutes, declaration of submission or bylaws, may a condominium owner be deprived of his interest in a substantial portion of the general common elements without his consent? We hold that he may not. This is not the type of power which may be inferred. It is recognized that the council of co-owners must have broad powers in determining and managing the common uses of the general common elements, and such determinations will be upheld if they are not arbitrary and capricious, bearing no reasonable relationship to the fundamental condominium concept. *Ritchey v. Villa Nueva Condominium Assoc.*, 81 Cal.App.3d 688, 146 Cal.Rptr. 695 (1978); *Hidden Harbour Estates v. Norman, supra; Ryan v. Baptiste,* 565 S.W.2d 196 (Mo.App.1978). However, in our opinion

al common elements owned in common. The trial court properly resolved this ambiguity, finding that the carport cubic content space was not part of the general common elements.

8. Article II, Section 1, deals with the voting rights of owners, and provides in part: "The vote of a 'majority of owners' of a duly consti-

tuted quorum as required by Section 3 of this Article shall decide any question brought before such meeting." When considered in context it is clear that this provision, likewise, was not intended as an all-inclusive grant of authority to the council of co-owners.

the power of the council of co-owners to actually convert the common general elements to the exclusive and private use and control of one of the individual owners constitutes a taking of the other remaining individual owners' property which must be clearly given by the statutes, declaration of submission or bylaws before its existence will be recognized. See, e. g., *Grimes v. Moreland,* 41 Ohio Misc. 69, 322 N.E.2d 699 (1974). In our opinion it is a great step from a delegation of the right to manage one's interest in the general common elements for common purposes to a grant of the right to dispose of that property interest completely for the sole, exclusive and private use of another.

Referring again to the bylaws in question, we note several instances in which minor intrusions into the general common elements have been authorized without the necessity of acquiring unanimous consent. Thus, in Article VII, Section 3 of the bylaws, the owner is given the right to attach fixtures to the interior service of bearing walls (part of the general common elements) so long as he does not interfere with or damage the structural integrity of the building. Article VII, Section 4, subsection (j) prohibits exterior antennae without prior written approval of a majority of the owners. Likewise, Article VII, Section 4, subsection (k) allows exterior clotheslines only if erected or maintained in such a manner as to be "non-visible" to the other owners. However, we find nothing in these provisions which would either directly, or by negative implication, give authority to the council of co-owners to, by majority vote or otherwise, authorize the construction and taking involved here.

In summary, we hold that the trial court erred when it denied the injunctive relief sought by appellants. Accordingly, the judgments entered by the trial court denying injunctive relief and awarding attorney's fees against appellant are reversed. The matter is remanded for further proceedings not inconsistent with this opinion.

CONTRERAS, P. J., and EUBANK, J., concur.