637 A.2d 879

OAKHAMPTON ASSOCIATION, INC.

v.

Richard H. REEVE, et al.

No. 834, Sept. Term, 1993.

Court of Special Appeals of Maryland.

March 1, 1994.

---

430

Cynthia K. Hitt (Bradford I. Webb and Siskin, Grady, Rosen & Hoover, P.A., on the brief), Baltimore, for appellant.

David L. Dowell, Towson, for appellees.

Argued before BISHOP, CATHELL and MURPHY, JJ.

BISHOP, Judge.

Appellees, Richard H. Reeve, Rennert Smelser, M.D., and E. Gordon Leatherman (the "Owners"), filed a complaint for declaratory judgment and collateral relief in the Circuit Court for Baltimore County against appellant, Oakhampton Association, Inc. (the "Association"). The Owners alleged that the Association did not have the right to adopt and implement a parking assignment program and sought, *inter alia*, declaratory and injunctive relief. After a hearing on motions for summary judgment filed by the Owners and the Association, the circuit court granted the Owners' motion. The Association filed a motion to alter or amend judgment, which the trial court denied, whereupon the Association filed a timely notice of appeal to this Court.

## Issues

The Association presents the following questions:

Did the trial court err, as a matter of law, by holding the defendant homeowner association to a standard applicable only to the condominium form of ownership, and by doing so, did the court improperly reform the express contractual relationship between the parties?

a. Did the trial court err by applying only condominium law regarding "exclusive" and "non-exclusive" easements and ignoring express contract provisions of the declaration and applicable law?

b. Did the trial court err by requiring unanimous consent of all of the members of the defendant association to an amendment to the declaration due to the "lack of specificity" in the original declaration on the subject of parking uses in the common areas?

## Facts

This argle-bargle (from the Scotch—argy-bargy, to argue, wrangle, haggle) was precipitated by the following undisputed facts (based upon the parties' agreed statement of facts included in the Association's brief pursuant to Rule 8–501(g)).

The Association is a Maryland homeowner association, as that term is defined in the Maryland Homeowners Association Act, Md.Real Prop.Code Ann. § 11B–101(g) (Supp.1993). Pursuant to the terms of a Declaration of Covenants, Conditions, and Restrictions (the "Declaration") dated September 25, 1980 and recorded among the Land Records of Baltimore County, the Association subjected all lots within the Oakhampton Subdivision (the "Subdivision") to certain covenants, conditions, and restrictions as set forth in the Declaration. The Association's documents also include the Articles of Incorporation, establishing the Association as an incorporated entity, the By–Laws, and the First Amendment to the By–Laws.

Pursuant to deeds dated August 26, 1982, September 17, 1982, and June 15, 1983 and recorded among the Land Records of Baltimore County, the Association conveyed lots in the

Subdivision to Rennert M. Smelser, Richard H. and Edwina Reeve, and E. Gordon and Lorraine Leatherman, respectively.

Pursuant to a First Amendment to the Declaration dated December 2, 1989 and recorded among the Land Records of Baltimore County, the members of the Association amended the Declaration with respect to restrictions on family day care homes and the leasing of dwellings.

Pursuant to the Declaration and a deed by Oakhampton, Inc., the Subdivision's developer, the Association owns all of the common areas and facilities of the Subdivision, defined in Article I, Section 2 of the Declaration as

those recreation amenities and facilities, roadways (excluding roadways which are dedicated [for] the public use where such dedication has been accepted by the appropriate governmental authorities), walkways, parking areas and open spaces erected and/or located within the Property; it being the intention of the Declarant that except for dedicated roadways and except for the individual Lots set out on the Plat, the entire Property shall be deemed "Common Area and Facilities."

In late 1990, the Association instituted a parking assignment program for all of the parking areas in the Subdivision. On November 13, 1991, in the case of *Reeve et al. v. Oakhampton Association, Inc.*, Case No. 91–CG–1010, in the Circuit Court for Baltimore County, the trial court concluded that the Association did not have the power to make a legally binding assignment of parking spaces absent an amendment to the Declaration.

In December 1991, the members of the Association proceeded to amend the Declaration. The terms of the Declaration require the execution and acknowledgement of two-thirds of the members of the Association to effect such an amendment. Pursuant to a Second Amendment to the Declaration, dated March 24, 1992 and recorded among the Land Records of Baltimore County, the members of the Association amended Article IV of the Declaration to add Section 5, which reads:

*Assigned Parking.* Any provision in this Declaration to the contrary notwithstanding, the Association's Board of Directors shall have the power to adopt, and promulgate among the membership in writing, reasonable rules and regulations regulating the use of parking areas including, but not limited to, the power to assign the use of parking spaces to individual Members/Owners.

The Second Amendment to the Declaration was executed and acknowledged by the required two-thirds of the members. The approval was not unanimous, because the Owner-members voted in the negative.

On June 15, 1992, a majority of the Board of Directors of the Association adopted a parking assignment program by a document styled "Rule Relating to Assigned Parking" (the "Rule"). In July 1992, the Association informed its members of the Second Amendment to the Declaration and of the Rule. The Rule took effect July 8, 1992, and the Owners filed the instant action a week later.

In addition to the agreed statement of facts *supra,* the following excerpts from the Declaration are relevant:

WHEREAS, Declarant intends to convey individual Lots located within the Property, together with improvements to be constructed thereon, subject to certain protective covenants, conditions, restrictions, reservations, liens, and charges as hereinafter set forth;

NOW, THEREFORE, Declarant hereby declares that the Property shall be held, sold and conveyed subject to the following easements and restrictions, for the purpose of enhancing the value, desirability and attractiveness of the Property. These easements, covenants, restrictions, conditions, charges and liens shall run with the Property (i.e., the land) and shall be binding on all parties having or acquiring any right, title or interest in the Property or any part thereof, shall inure to the benefit of each Owner thereof, and shall be binding upon the Property, to the end that such easements, covenants, restrictions, conditions, charges and

liens shall run with, bind and burden the Property in perpetuity, except as hereinafter limited.

\* \* \* \* \* \*

## ARTICLE IV

## PROPERTY RIGHTS

*Section 1. Members' Easements of Enjoyment.* Every Member shall have a right and easement of enjoyment in and to the Common Area and Facilities and such easement shall be appurtenant to and shall pass with the title to every Lot, subject to the following provisions:

\* \* \* \* \* \*

(g) the rights of the Owners of the Lots to perpetual easements over and upon any of the Common Area and Facilities for such portions of their buildings that may overhang or otherwise encroach upon any of the Common Area and Facilities, for support, for the purpose of necessary repairs and maintenance, for the maintenance of reasonable appurtenances to their buildings and for reasonable ingress and egress to and from any buildings through and over the Common Area and Facilities.

*Section 2. Rights Not Subject to Suspension.* Notwithstanding anything in this Declaration to the contrary, the Association shall have no authority to suspend, either temporarily or permanently, any of the rights created in Paragraphs (f) and (g) of Section 1 of this Article for any reason whatsoever.

\* \* \* \* \* \*

## ARTICLE X

## EASEMENTS

\* \* \* \* \* \*

*Section 3. Easement for Streets, etc.* Any and all streets, walkways, roadways, sidewalks, and/or the like which are owned by the Association shall be subject to non-exclusive easements for ingress, egress and regress for the

benefit of all Members of the Association, the Declarant, their respective heirs, personal representatives and assigns and all other persons claiming under any of them.

## ARTICLE XI

## MISCELLANEOUS

*Section 1.  Amendment.*  ... [T]his Declaration may be amended by an instrument executed and acknowledged by two-thirds (2/3) of the Class A members of the Association, which instrument shall be recorded among the Land Records for Baltimore County, Maryland....

After the hearing on the motions for summary judgment, the trial court issued an opinion, which reads in relevant part:

This Court's research reveals that no Maryland case law exists on this subject.  This Court surveyed the treatment this issue has received in other jurisdictions and found several Illinois cases that were of assistance.  In order to determine if certain grants divested owners of their property rights, the Illinois courts make a distinction between nonexclusive and exclusive easements.

Illinois has defined a non-exclusive easement as "where the percentage of common ownership appurtenant to each condominium unit remains constant, the unit owner's undivided interest in the common elements is not diminished by the grant to a third party of a nonexclusive use of, or easement over, the common areas."  ...

An exclusive easement is a grant that results in the "unit owner [being] precluded from using a portion of the common elements to which he previously had access."  ...

\*  \*  \*  \*  \*  \*

... This Court is convinced that the assignment of parking spaces to the homeowners at Oakhampton was a grant of an exclusive easement because it "fully precluded" other owners from using the spaces previously available to them. This improperly divested the Plaintiffs of a portion of their property.

This Court finds that the Defendant cannot exercise this right by amendment absent the consent of each homeowner to release his or her right to the common property. To effect the assignment of parking spaces requires unanimity. While the Association could have reserved the right to assign parking spaces, there is no such power reserved in the original condominium declaration.

This Court finds that because the right to promulgate rules and regulations on parking uses of the common areas was not explicitly reserved in the original declaration, no subsequent amendment can divest the owners of their property rights without unanimity.

### Discussion

The Association argues that the trial court erred when it granted the Owners' motion for summary judgment because: (1) the Declaration, as the operative document, by its express terms, states clearly that only two-thirds approval of the members is required to effect an amendment to the Declaration; (2) the trial court ignored fundamental differences between the condominium form of ownership and homeowner associations when it relied on the Illinois case law; (3) the Owners do not own any interest, let alone a fee simple interest, in the common areas, and therefore, there can be no diminution in the percentage interest of the Owners; and, (4) the Declaration is a contract that must be interpreted according to its terms.

The Owners, on the other hand, contend that: (1) the Declaration did not create contractual rights to the common areas, including the parking spaces, subject to change by a two-thirds vote of the members; rather, the Declaration granted the Owners a perpetual easement to the common areas for ingress and egress; (2) declarations are to be construed in favor of minimum restrictions, and under that standard, the Declaration does not give the Association the power to restrict or regulate the Owners' interests in the parking spaces, even if the Association's Rule is reasonable; and, (3) because the Rule grants exclusive easements, the

regulation impermissibly divests the Owners of their vested easement rights. We shall conclude that the Owners' interests in the parking spaces are not perpetual and unlimited, that the Association did have the power to amend the Declaration to include in it a provision regarding the reasonable regulation of parking spaces, and therefore, the circuit court erred when it granted the Owners' motion for summary judgment.

The Maryland Condominium Act provides that "[e]ach unit owner shall own an undivided percentage interest in the common elements equal to that set forth in the declaration. Except as specifically provided in [the Act], the common elements shall remain undivided." Md.Real Prop.Code Ann. § 11–107(a) (1988). That act, however, does not apply in this case. The prefatory note to the Uniform Planned Community Act explains the difference between the condominium form of ownership and the multi-unit residential planned community:

> The explosive rise in land costs during the 1970's and the growing acceptance of planned unit development (PUD) zoning techniques by local governments have created new interest in an old form of real estate development: the multi-unit residential "planned community" served by common area facilities owned and operated by a homeowner association. Although such developments are remarkably similar to condominiums, they have operated for years under the common law without the benefit of statutory enablement....

> The homeowner associations that administer such common law planned communities often perform exactly the same functions as the condominium associations that administer statutory condominium regimes. They derive their powers from a declaration of covenants, conditions and restrictions (CC & R declaration) ... which relies for its enforceability on the state common law governing covenants which "run with the land." ... The only basis on which CC & R regimes are exempted from state and local condominium regulation is that *title to the common areas is held in*

*the name of the homeowner association instead of being divided among the unit owners as tenants in common.* Unif. Planned Community Act (U.L.A.1980) (prefatory note) (emphasis added).

The parties go to great lengths to characterize the Declaration as either a grant—as the Owners would have it—or a contract—as the Association suggests. Although we are persuaded that the Declaration, together with the individual deeds, do grant certain property interests in the common areas, those interests are defined by and subject to the restrictions set forth in the Declaration. We shall first determine exactly what interest the Owners have in the parking spaces, and then turn to the question of whether the Association has the power to regulate that interest through an amendment to the Declaration.

■ Both the Association and the Owners cite *Markey v. Wolf,* 92 Md.App. 137, 607 A.2d 82 (1992), in which we discussed the rules of construction for the interpretation of restrictive covenants. Here, however, we are not considering to what extent a restrictive covenant controls the Owners' use of the parking spaces; rather, we must determine what interest the Owners have, *i.e.,* the scope of their interest in the use of the parking spaces. In *Parker v. T & C Dev. Corp.,* 281 Md. 704, 709, 381 A.2d 679 (1978), the Court of Appeals explained:

"[w]hen an easement is acquired by an express grant, . . . the extent of the rights thereby granted must necessarily depend upon a proper construction of the conveyance or that part of it by which the easement was created. The primary rule for the construction of contracts generally— and the rule is applicable to the construction of a grant of an easement—is that a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible." *Buckler v. Davis Sand, Etc., Corp.,* 221 Md. 532, 537, 158 A.2d 319 (1960). "[T]he scope of the easement is to be determined from the language of the grant and any doubtful language must be resolved in

favor of the grantee." *Reid v. Washington Gas Lt. Co.*, 232 Md. 545, 549, 194 A.2d 636 (1963).

Because there were no disputed issues of fact below, and the trial court granted the Owners' motion as a matter of law, we shall review the Declaration and determine whether the trial court was legally correct. "In reviewing a summary judgment, an appellate court has the same information from the record and decides the same issues of law as the trial court." *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 591–92, 578 A.2d 1202 (1990).

There is no question that the Declaration, along with the deeds, grants the Owners an easement of enjoyment in and to the common areas, including the parking areas. *See* Declaration, art. I, § 2; art. IV, § 1. Specifically, the easement is one for ingress, egress, and regress. *See* Declaration, art. X, § 3. The Owners argue that the easement over the parking area is perpetual, *i.e.*, permanent, and not subject to the "general rule" of art. XI, § 1 that the Declaration may be amended by a two-thirds vote of the members. The Owners rely on art. IV, § 1(g) and art. IV, § 2 of the Declaration.

Although we agree that art. IV, § 2 provides that the Association cannot suspend, either temporarily or permanently, the "perpetual" easements granted in art. IV, § 1(g), the only easement granted in that section that relates in any way to the parking areas is one for "*reasonable* ingress and egress to and from any buildings through and over the Common Area." (Emphasis added). The use of the term "reasonable" clearly reflects the parties' intention to limit the extent of the perpetual easement to that which is reasonably necessary for ingress and egress to and from the buildings. Thus, the Owners do not have an unlimited right to use any and all of the parking spaces, but only a right to such use that is reasonably necessary for access to their buildings.

Because the Owners' perpetual easement to the parking spaces is subject to the reasonableness limitation, the Association, through its membership, has the power pursuant to art. XI, § 1 to amend the Declaration to provide for the

regulation of the parking spaces, but only to the extent that the regulation does not have the effect of unreasonably limiting the Owners' access to the buildings.  There is no indication in the record that the Association's attempt to regulate the parking spaces would have this effect.  The Owners pose numerous hypothetical questions:

> If a member is assigned space # 12, is it an interest in real estate?  Does he own it?  When he sells his house, it is [sic] part of the deal?  Could he sell it *separately* from his house?  How about leasing?  Is it a mere license, and if so, it is [sic] personal to him alone?  Does it pass by inheritance?  Is it attachable?  Is it assessable?  Will it affect real estate taxes?  Are there any maintenance duties?  Does it create any special liabilities?  Instead of parking a car in the space, could one park a trailer?  A boat?  Pitch a tent?  Cook on a grille [sic]?  Can the board reassign the spaces whenever it wants and give him space # 47 across the parking lot?  What if the space given one member were in front of his house while that given another were two blocks away?  Does an owner have a 'right' to a convenient space?  Could a 'bad' space be given to someone out of favor with the board?

Many of these questions, however, are answered by the Declaration, and those that are not are properly left for another, not so hypothetical, case.

■  The trial court relied on three Illinois cases, *Sawko v. Dominion Plaza One Condo. Ass'n No. 1–A,* 218 Ill.App.3d 521, 161 Ill.Dec. 263, 578 N.E.2d 621 (1991); *Schaumburg State Bank v. Bank of Wheaton,* 197 Ill.App.3d 713, 144 Ill.Dec. 151, 555 N.E.2d 48, *cert. denied,* 133 Ill.2d 573, 149 Ill.Dec. 337, 561 N.E.2d 707 (1990); and *Stuewe v. Lauletta,* 93 Ill.App.3d 1029, 49 Ill.Dec. 494, 418 N.E.2d 138 (1981), and determined that "the assignment of parking spaces . . . was a grant of an exclusive easement because it 'fully precluded' other owners from using the spaces previously available to them."  The trial court concluded that, because the right to regulate the parking areas was not explicitly reserved in the Declaration, the assignment of parking spaces required the

members' unanimous consent. We hold that the trial court erred when it reached this conclusion because it failed to: (1) consider that the Owners hold only a limited easement of *reasonable* ingress and egress over the parking area to and from their buildings, rather than an undivided percentage interest in the parking area, as was the case in the Illinois condominium cases; and, (2) give effect to the broad provision of art. XI, § 1, which allows the Declaration to be amended by a two-third's approval of the Association membership. *See also* Unif. Planned Community Act § 2–108 cmt. 2 (U.L.A. 1980) (suggesting that a homeowner association may assign reserved parking spaces to designated unit owners pursuant to the association's rule-making powers, unless that power is limited in the declaration, because "[s]uch a parking space would differ from a[n exclusive easement] in that its use would be merely a personal right of the person to whom it is assigned [rather than a property right.]").

**JUDGMENT REVERSED; APPELLEES TO PAY THE COSTS.**