667 A.2d 947

**Stanley ALPERT, et al.**

v.

**LE'LISA CONDOMINIUM, et al.**

**No. 1873, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Nov. 30, 1995.

240

Stanley Alpert (Yvette N. Diamond and Cohen, Alpert and Forman, on the brief), Baltimore, for appellants.

Joseph E. Moore (Williams, Hammond, Moore, Shockley & Harrison, P.A., on the brief), Ocean City, for appellees.

Argued Before BLOOM, MURPHY and SALMON, JJ.

SALMON, Judge.

On November 17, 1993, Stanley Alpert and his wife, Carol (the Alperts), filed suit against Le'Lisa Condominium and Edward M. Swiggard, John C. Tunell, and Alfred B. Inners, members of Le'Lisa's Board of Directors (Le'Lisa), in the Circuit Court for Worcester County. The suit alleged, *inter alia,* that Le'Lisa Condominium's board had no authority to assign individual parking spaces for the exclusive use of individual unit owners. Appellants asked for declaratory and injunctive relief.

A hearing on the merits was held on June 28, 1994 (Eschenburg, J., presiding). Judge Eschenburg reserved judgment, allowing the plaintiffs and the defendants to submit memoranda of law. On August 24, 1994, Judge Eschenburg ordered that the plaintiffs' case be dismissed with prejudice. The Alperts filed this timely appeal and present three questions, which have been rephrased for clarity:

I. Did the hearing judge fail to answer a question raised by appellants in their suit for declaratory judgment?

II. Is the assignment of parking spaces a regulation of the use of a common element or a taking of a portion of each unit owners' percentage interest in the common elements?

III. Did the condominium association have a duty to disclose to appellants, prior to their purchase of a condominium unit, certain informally adopted rules and regulations concerning parking?

## FACTS

On February 8, 1993, the Alperts bought unit number 205 in the Le'Lisa Condominium, located at 10 East 143rd Street, Ocean City. One of the features that persuaded the Alperts to purchase the unit was their belief that unit 205 had a covered parking space permanently assigned to it.[1]

There are 32 units at Le'Lisa, but only 20 parking spaces are located under the building, shielded from the elements. Enough parking is available at Le'Lisa to accommodate all unit owners; however, 12 owners must always park outside. Since 1984, the covered spaces have been assigned based on length of ownership in the condominium: When a unit with a space under the building is sold, the parking space is reassigned to the owner who has been denied covered parking the longest, that is, to the most senior unit-owner who is not currently assigned a space under the building. This parking allocation method was followed pursuant to a legally unenforceable condominium rule, which had not been promulgated in accordance with the requirements of the Maryland Condominium Act.[2] Nevertheless, except for the Alperts, all unit owners had accepted the aforementioned parking allocation method.

---

**1.** This belief was not based on anything appellees or the previous owners of unit 205 represented to the Alperts. It was apparently based on the fact that one of the covered parking spots had, at the time of purchase, the number 205 painted on it. Appellants assumed the parking spot was reserved for their unit.

**2.** The requirements for adoption of condominium rules and regulations are: each unit owner must be mailed a copy of the proposed rule, notice that the owner is permitted to submit written comments, and notice of the proposed effective date of the rule; an open meeting must be held to allow unit owners' comments on the proposed rule; the rule must be passed at a regular or special meeting by majority vote. Md.Code, (1974, 1988 Repl.Vol.), § 11–111 of the Real Property Article.

Apparently, these formal requirements were not always followed by Le'Lisa. The rule does not appear in the minutes of the condominium association for 1984 when it was purportedly "passed" by the board. The only written mention of the policy is in the minutes of the 1989 annual meeting, which states only that the parking system was discussed at that time.

The Alperts were not made aware of this parking system until after they had purchased their unit, when they received a letter from Edward M. Swiggard, president of the condominium association, welcoming them to the building. A subsequent letter from Mr. Swiggard stated, "You are not the first buyer who has been misled by the seller or their agent" about the parking situation.

The Alperts did not acquiesce to the parking policy. Instead, they continued to use the space under the building that the previous owner of unit 205 had used. In July 1993, Le'Lisa painted over the number, changing it from 205 to 208. The sign was repainted when the Alperts objected, but it was re-designated as 208 in September 1993. Again the Alperts objected and were rewarded with a new sign indicating the space was assigned to their unit. In March 1994, after the subject suit was instituted, the sign was once again changed to 208.

Section 7 of the Le'Lisa condominium declaration provides that all parking on condominium property is part of the general common elements. Article XIV of the by-laws, at the time the Alperts purchased their unit, stated that "[p]arking in the common elements shall be reserved for the use of owners, their tenants, guestes [sic], invitees and licensees." No mention was made in either the declaration or the by-laws of any parking regulations or system for assignment of spaces. Appellants received a copy of the declaration and by-laws prior to their purchase of unit 205.

The Council of Unit Owners held a special meeting on April 16, 1994; 31 of the 32 units were represented in person or by proxy. At that meeting, Article XIV of the by-laws was amended to read:

> Parking in the common elements shall be reserved for the use of owners, their tenants, guests, invitees and licensees, in those designated spaces determined by the Board of Directors based on the length of ownership of the unit. The covered spaces shall be allocated to the owners who have owned their units for the longest period of time. Upon the

sale of a unit whose owner has a covered parking space, the parking space will be assigned on the basis of longevity of ownership, that is, the spaces under cover of the building are apportioned for the use of the owners owning the unit for the longest period of time and the date of recording of the deed conveying the unit to the owners shall be conclusive evidence of the time at which the unit owner acquired ownership; or such parking can be otherwise designated by the Board of Directors based upon the manner of designation agreed to by affirmative vote of unit owners having at leas[t] 66⅔% of the votes in the Council of Unit Owners.

The by-law amendment passed with the approval of 93.7 percent of the unit owners. The Alperts were the only owners at the meeting not to approve the amendment. They abstained. A certificate of the change in the by-laws was recorded in the Land Records office of Worcester County, Maryland.

## DISCUSSION
### I.

 Appellants contend that the hearing judge did not answer their claim that the council of unit owners had no authority to assign individual parking spaces. "In an action properly brought under the Declaratory Judgments Act, the court ordinarily must declare the rights of the parties in light of the issues raised." *Jennings v. Government Employees Ins. Co.*, 302 Md. 352, 355, 488 A.2d 166 (1985); *see also* Md.Code (1974, 1995 Repl.Vol.), § 3–406 of the Courts and Judicial Proceedings Article. There is no error in dismissing an action when the trial judge declares in some detail in a written opinion the rights of each party. *See Downing Dev. Corp. v. Brazelton*, 253 Md. 390, 394, 252 A.2d 849 (1969) (holding that dismissal of action was not error when written opinion "delineated in some detail" rights of parties and reasons for court's holding); *Pope v. Sun Cab Co.*, 62 Md.App. 218, 488 A.2d 1009 (1985) (holding that trial court did not dismiss declaratory action without declaration of rights because order incorporated by reference reasons stated in mo-

tions before court), *aff'd*, 305 Md. 807, 506 A.2d 641 (1986). Judge Eschenburg stated in a written opinion and order that he was "persuaded by Le'Lisa's arguments" that Le'Lisa's by-laws allowed the regulation of parking by the condominium: "Parking spaces are common elements, and are under the regulation of the condominium, as embodied in the By–Laws." This holding answered the question raised by the Alperts and squarely puts before us the issue of whether the hearing judge was correct in his holding.

## II.

■ Appellants argue that Le'Lisa does not have the authority to designate specific parking spaces for the exclusive use of individual unit owners without amending the declaration by unanimous consent of the unit owners. The Alperts assert that, because the parking area is designated as a common element in Le'Lisa's declaration and because no reference is made in the declaration to assignment of parking spaces, the council cannot assign spaces. The Alperts further argue that to do so would encroach on each tenant's right to access and possession of the common elements, thereby prejudicing the rights of other tenants without each tenant's consent.[3]

---

**3.** Appellants expressly state in their brief that they are *not* contending that Le'Lisa has created a limited common element out of a common element by implementing its parking policy. Appellants maintain that they did not make this argument in the circuit court, however, the hearing judge expressly asked if this was what they were arguing and appellants answered affirmatively.

> **THE COURT:** Well, let me ask you this ... just so I can summarize your argument for you.... [Y]our argument is that you can't take a common element, and by a bylaw, turn it into a limited common element?
> **THE PLAINTIFF STANLEY ALPERT:** That is correct, Your Honor.

At oral argument in this Court, appellants seemed to have reverted to their position at the hearing. Mr. Alpert argued that appellants contend that Le'Lisa "in effect" made a limited common element out of the parking spaces by assigning them to individual unit owners. This is plainly not correct.

Limited common elements are those parts of the common elements that "shall be used only by the unit owner of the unit to which their use

The condominium as a form of real property ownership is authorized by the Maryland Condominium Act, Md.Code (1974, 1988 Repl.Vol. & 1995 Cum.Supp.), § 11–101 *et seq.* of the Real Property Article (RP). All unit owners own the common elements as tenants in common. RP § 11–108(a); *see also Starfish Condo. Assoc. v. Yorkridge Serv. Corp.,* 295 Md. 693, 703, 458 A.2d 805 (1983). Each unit owner, therefore, owns an undivided percentage interest in the common elements. *See* RP § 11–107(a). "The common elements may be used only for the purposes for which they were intended and, except as provided in the declaration, the common elements shall be subject to mutual rights of support, access, use, and enjoyment by all unit owners." RP § 11–108(a).

Le'Lisa's by-laws, Article V, § 1, provide that the affairs of the council of unit owners shall be governed by a board of directors, and Article V, § 3(d), authorizes the board to promulgate and enforce "such rules and regulations and such restrictions on or requirements as may be deemed proper respecting ... the use of the general and limited common elements as are designated to prevent unreasonable interference with the *use* and occupancy ... of the general and limited common elements by the members...." (Emphasis added.) The council of unit owners is expressly authorized by statute to regulate the use of the common elements. *See* RP § 11–109(d)(12) ("The council of unit owners has ... the following powers: ... [t]o regulate *the use,* maintenance,

---

is limited in the declaration or condominium plat." Md.Code (1974, 1988 Repl.Vol., 1994 Cum.Supp.), § 11–108(a) of the Real Property Article. Limited common elements become appurtenant to the unit and are conveyed with the unit. *See* Md.Code (1974, 1988 Repl.Vol.), § 11–108(b) of the Real Property Article ("Any unit owner ... to which the use of any limited common element is exclusively restricted may grant by deed the exclusive use, or the joint use in common with one or more of the grantors, of the limited common elements to any one or more unit owners."). The parking spaces at issue here were not limited common elements because they would not be conveyed with the unit. Each parking space was assigned only so long as a certain person owned the unit. Once the unit was sold to someone new, the parking space would be reallocated to a different person, not the new owner.

repair, replacement, and modification of common elements")
(emphasis added).

■ The central issue to be decided is whether the assignment of parking spaces is a regulation of the use of a common element or a taking of a portion of each unit owner's percentage interest in the common areas. This is an issue of first impression in Maryland. If the assignment of parking spaces is a change in the percentage interest in the common elements, Le'Lisa must pass an amendment to the declaration, which must be approved unanimously, to make the change effective; a mere by-law amendment would be ineffective. *See* RP § 11–107(c) ("Any change [in percentage interest of the common elements] shall be evidenced by an amendment to the declaration"). If the assignment of parking spaces is a regulation of use restriction, a by-law amendment is sufficient to institute the parking system. *See* § 11–104(c) ("The bylaws may contain any ... restriction on or requirement respecting the use and maintenance of ... the common elements.").

> There is a distinct difference between [cases] in which exclusive use, control, and/or ownership of the common areas is taken from some or all of the unit owners and cases in which some reasonable restrictions or regulation of the common areas is imposed on all owners. In the first instance, each owner's percentage interest in the common area is altered. In the second instance, the percentage ownership is unaffected.

*Jarvis v. Stage Neck Owners Ass'n,* 464 A.2d 952, 956 (Me. 1983). "Use restriction" has been defined as a rule "reasonably related to the promotion of the health, happiness and peace of mind of the unit owners." *Hidden Harbour Estates v. Basso,* 393 So.2d 637, 640 (Fla.Ct.App.1981). Such restrictions are generally promulgated in order to "prevent activities which might prove annoying to the [other] residents." *Ritchey v. Villa Nueva Condo. Ass'n,* 81 Cal.App.3d 688, 146 Cal.Rptr. 695 (Ct.App.1978). Use restrictions usually take the form of rules that impose a wide variety of restraints on what unit owners may do on or with condominium property. *See,*

*e.g., Johnson v. Hobson,* 505 A.2d 1313 (D.C.1986) (rule prohibiting parking unlicensed or unregistered cars in condominium parking lot); *Hidden Harbour Estates, Inc. v. Norman,* 309 So.2d 180 (Fla.Dist.Ct.App.1975) (regulation of consumption of alcohol in condominium club house); *Dulaney Towers Maintenance Corp. v. O'Brey,* 46 Md.App. 464, 418 A.2d 1233 (1980) (rule pertaining to number of pets that may be kept in each unit).

> [I]nherent in the condominium concept is the principle that to promote the health, happiness, and peace of mind of the majority of the unit owners since they are living in such close proximity and using facilities in common, each unit owner must give up a certain degree of freedom of choice which he might otherwise enjoy in separate, privately owned property. Condominium unit owners comprise a little democratic sub society of necessity more restrictive as it pertains to use of condominium property than may be existent outside the condominium organization.

*Hidden Harbour Estates, supra,* 309 So.2d at 181–82.

Courts in other states have addressed issues similar to the one presented here. In *Kaplan v. Boudreaux,* 410 Mass. 435, 573 N.E.2d 495 (1991), the issue was whether a by-law amendment altered the percentage interest in the common elements of the owners. Boudreaux owned unit 11 at 90 Park Street Condominium. The condominium master deed designated all land and walkways as common areas. *Id.,* 573 N.E.2d at 496. The by-laws prohibited all occupants from using the outdoor common areas for any purpose other than ingress and egress along paved paths.[4] *Id.,* 573 N.E.2d at 497. Boudreaux wanted to landscape part of a walkway leading from the street to his unit. A by-law amendment was passed by a 77.83 percent vote to exempt Boudreaux's walkway from the use restrictions placed on all other walkways and reserving to unit

---

4. The by-laws prohibited "all ... activities" other than ingress and egress along the walkways, including "barbecuing or cooking, sun bathing, loitering, participating in games or other recreation." *Kaplan,* 573 N.E.2d at 497 n. 4.

the exclusive right to use that walkway, thereby excluding any other unit owner from using the walkway at all. *Id.*, 573 N.E.2d at 499. Kaplan, another unit owner, alleged that the by-law amendment reduced his percentage interest in the common property. *Id.*, 573 N.E.2d at 496. Boudreaux contended that the amendment simply altered the allowable uses of a common area. *Id.*, 573 N.E.2d at 499.

The Massachusetts Supreme Judicial Court held that the "grant of exclusive use to one unit owner of a common area is sufficient to change the relative interest of the unit owners in that common area." *Id.*, 573 N.E.2d at 500. This exclusivity of use was the deciding factor in the court's holding that the amendment was not a "generalized use restriction" but was, instead, an invalid taking of a portion of each unit owner's percentage interest in the common areas. *Id.*,

In *Makeever v. Lyle*, 125 Ariz. 384, 609 P.2d 1084 (Ct.App. 1980), Lyle, a unit owner at Laguna West, a condominium regime, began construction of a second story on his unit and a basement under his carport after receiving the approval of twelve of the sixteen unit owners.[5] *Id.*, 125 Ariz. at 386, 609 P.2d at 1086. Other owners brought suit to enjoin Lyle from proceeding, alleging the construction was a wrongful taking for the sole and exclusive use of one unit owner of an area belonging to all the unit owners in common, which necessitated the unanimous consent of all the unit owners. *Id.* Lyle contended that, because there was no specific provision in the by-laws governing the construction, he needed only the approval of a majority of the other unit owners. *Id.*

The Arizona intermediate court held that a condominium association "must have broad powers in determining and managing the common uses of the general common elements." *Id.*, 125 Ariz. at 388, 609 P.2d at 1088.

[T]he power ... to actually convert the common general elements to the exclusive and private use and control of one of the individual owners constitutes a taking of the other

---

5. The board of directors never officially approved the construction.

remaining individual owners' property.... *[I]t is a great step from a delegation of the right to manage one's interest in the general common elements for common purposes to a grant of the right to dispose of that property interest completely for the sole, exclusive and private use of another.*

*Id.,* 125 Ariz. at 389, 609 P.2d at 1089 (emphasis added). The court held that the construction was a taking.

*Kaplan* and *Makeever* are distinguishable from the situation at issue here because both involved the grant of exclusive use of a portion of the common area *to one unit owner only.* What Le'Lisa has done, however, is granted *temporary* use of a portion of the common area to *each unit owner.*

Appellants cite a trio of Illinois cases as supporting their position that parking assignments are not use restrictions but are, instead, a taking that diminishes an owner's interest in the common elements. In *Stuewe v. Lauletta,* 93 Ill.App.3d 1029, 49 Ill.Dec. 494, 418 N.E.2d 138 (1981), the Illinois intermediate court held that the Les Chateau condominium could not assign parking spaces to a particular condominium unit owner without obtaining approval of all the owners. *Id.,* 49 Ill.Dec. at 496, 418 N.E.2d at 140. The Laulettas had contracted to buy a condominium unit and two parking spaces inside the garage. When it turned out there was no room in the garage, the developer designated a new parking space that had not been previously identified as a parking area on the survey of the property. *Id.,* 49 Ill.Dec. at 495, 418 N.E.2d at 139. The shrubbery was removed from this area and the Laulettas began to park there. *Id.,* 49 Ill.Dec. at 496, 418 N.E.2d at 140. An amendment to the condominium's declaration to provide for these two parking spaces was discussed by the Les Chateau board of directors but never approved. *Id.* Several other unit owners brought suit contending the Laulettas had attempted to purchase a parking space that the developer did not own and that the parking area remained part of the common elements. *Id.* The Laulettas contended they had contracted to buy two spaces and were thus entitled to them. *Id.*

What distinguishes *Stuewe* from the case at hand is that the declaration specifically indicated that each unit owner had a perpetual and exclusive easement of the unit's parking space. *Id.* The designation of an additional area as parking, given exclusively and perpetually to one unit owner, therefore, actually did diminish the common elements because the developer permanently took away land that had been surveyed as part of the common elements.

In *Schaumburg State Bank v. Bank of Wheaton,* 197 Ill. App.3d 713, 144 Ill.Dec. 151, 555 N.E.2d 48, *cert. denied,* 133 Ill.2d 573, 149 Ill.Dec. 337, 561 N.E.2d 707 (1990), the Schaumburg State Bank, as trustee for the owner of a commercial unit in Mona Kea Condominiums, filed suit to quiet title to its one-eighth undivided interest in the common elements. *Id.,* 144 Ill.Dec. at 152, 555 N.E.2d at 49. The condominium association had amended the declaration to allow Mona Kea to grant an easement of ingress and egress for vehicular and pedestrian traffic over its common driveway with the Gary–Wheaton Bank on the adjoining property. The Gary–Wheaton Bank granted a similar easement over its common driveway to Mona Kea to form a continuous passage from roadways running along opposite sides of the properties. *Id.,* 144 Ill.Dec. at 152–153, 555 N.E.2d at 49–50. The Schaumburg State Bank alleged that its interest in the common elements was damaged by the easement. The Appellate Court of Illinois held that the grant of a non-exclusive easement over the common areas to a third party did not diminish the percentage of common ownership appurtenant to each condominium unit. *Id.,* 144 Ill.Dec. at 155, 555 N.E.2d at 52.

Relying on dicta in *Schaumburg,* the Appellate Court of Illinois held in *Sawko v. Dominion Plaza One Condo. Ass'n,* 218 Ill.App.3d 521, 161 Ill.Dec. 263, 578 N.E.2d 621 (1991), that a condominium association's adoption of a parking rule assigning garage spaces improperly diminished an owner's interest in the common elements. The Dominion Plaza board had decided in closed meetings to restrict parking in the West Garage by assigning spaces to unit owners. *Id.,* 161 Ill.Dec. at 265, 578 N.E.2d at 623. Sawko, a unit owner, sought an

injunction against enforcement of the parking regulation, alleging that it violated his and other owners' right to non-exclusive parking. He also alleged the decision was made without giving prior notice to unit owners and without their approval, in violation of the condominium declaration. *Id.*, 161 Ill.Dec. at 267, 578 N.E.2d at 625. Dominion Plaza argued the assignment was a regulation, not a change in ownership interest in the common elements, and that the notice given was adequate. *Id.*

The court held that, because the condominium's grant of use of a parking space precludes any other unit owner from using a space to which the owner previously had access, the unit owners' property interests were diminished. *Id.*, 161 Ill.Dec. at 269, 578 N.E.2d at 627. The court never fully addressed the notice argument. Once it found that the garage was part of the common elements, it held that any restriction depriving unit owners of use of the common elements was invalid as promulgated. The Illinois court did not consider whether the assignment was merely a use restriction.[6]

The trial judge in *Oakhampton Assoc., Inc. v. Reeve*, 99 Md.App. 428, 637 A.2d 879 (1994), relied on the aforementioned three Illinois cases in ruling that a homeowners' association had no authority to assign parking without the unanimous consent of the members. We reversed that decision because the trial judge had relied on condominium law, thereby failing to distinguish the property interests of unit owners in a condominium regime, who own the common areas as tenants in common, and unit owners in a multiunit residential planned community, who only own a limited easement of reasonable ingress and egress over the common areas while

---

**6.** Dominion Plaza argued it had the authority to adopt reasonable rules and regulations under Article V, paragraph 7 of its declaration, which stated that its board of directors may do so at any meeting with a quorum present. Sawko argued that the parking assignment had to be valid under a different provision of the declaration, Article XII, paragraph 9, which "set out procedures to modify the declaration's provisions regarding the unit owners' ownership of the common elements." *Id.*, 161 Ill.Dec. at 267, 578 N.E.2d at 625.

the homeowners' association owns the common areas. *Id.* at 441, 637 A.2d at 885. The Alperts suggest that this Court thereby impliedly acknowledged that its ruling would be different under the Maryland Condominium Act.

Appellees rely on *Juno By The Sea North Condo. v. Manfredonia,* 397 So.2d 297 (Fla.Dist.Ct.App.1980) *cert. denied,* 402 So.2d 611 (Fla.1981). In that case, Juno by the Sea, a condominium regime with 70 units, had 97 parking spaces: 20 spaces under cover, 50 spaces adjacent to the building, and 27 spaces across the street from the building. *Id.* at 301. The 20 covered spaces were designated as limited common elements and sold to individual unit owners. All other parking spaces were designated common elements. The 50 spaces adjacent to the building were assigned to the 50 unit owners who had not bought covered spaces. *Id.*

Several unit owners brought suit against the condominium association, alleging that the parking assignment scheme improperly converted parts of the common elements into limited common elements. *Id.* at 302. The condominium association asserted that it had been given broad authority to regulate the use of common elements and limited common elements under the Florida statute and its own declaration. *Id.* The Florida District Court of Appeals agreed with the condominium association, holding that it had the authority to regulate the use of common elements and that the assignment did not change the parking spaces into limited common elements because they did not become appurtenant to the units. *Id.* at 302–03. The Court continued:

> Moreover, we do not believe that by assigning individual spaces in a common element parking lot the association is "materially altering" those common elements. *The common elements parking lot involved continues to be used as a parking lot for the benefit of the unit owners.* If [the unit owners'] argument were accepted there could be no assigned spaces even if there were 70 instead of 50 spaces in the lot adjacent to the building. Surely some regulation of the parking areas would be necessary even if there was an excess of parking spaces in the lots.

Parking spaces, by their very nature, are exclusive; i.e., only one vehicle can be parked in a space at a time. By necessity the 50 spaces are going to be used "exclusively" by 50 out of 70 of the unit owners at any given time. In other words, 20 of the unit owners will always be excluded from use of the 50 spaces no matter what regulations are enacted.

*Id.* (internal footnote omitted) (emphasis added).[7]

 We believe that the Florida case is better reasoned than the Illinois cases and follow it here. Le'Lisa has restricted the use of parking spaces in order to avoid a chaotic free-for-all by assigning each unit owner a parking space and allowing each unit owner to become eligible for the more preferred spaces. The parking restriction is related to pro-

---

**7.** Appellants attempt to distinguish this case by noting that the decision rests upon the fact that the unit owners had at least constructive notice of the parking regulation before buying because Rule V of the Rules and Regulations of the association dealt with parking assignments. *See id.* at 304, 302. Appellants in this case did have notice that there was assigned parking at Le'Lisa; however, they did not have notice as to how the system worked.

Further, appellants had notice from Article XVI of the by-laws that the document could be amended by a 66⅔ percent vote of the unit owners. Appellants also had notice that the by-laws could contain "restriction[s] on or requirement[s] respecting the use and maintenance of the units and the common elements." RP § 11–104(c). *See Allers v. Tittsworth*, 269 Md. 677, 686, 309 A.2d 476 (1973) ("Every man is presumed to know the law"). Therefore, appellants knew the by-laws could be amended by the insertion of use restrictions. *Cf. Board of Directors of By the Sea Council v. Sondock*, 644 S.W.2d 774 (Tex.Ct.App. 1982) (holding that condominium owners knew at time of purchase they bought subject to all provisions of declaration, one of which was right to amend it).

Appellants also attempt to distinguish *Juno* by arguing that the Florida condominium statutory scheme, unlike Maryland's, does not state that common elements are owned by the unit owners as tenants in common. This is incorrect; the Florida statute merely does not call the interest a "tenancy in common." The Florida statute states that "[t]here shall pass with a unit, as appurtenances thereto: An undivided share in the common elements." FLA.STAT.ANN. § 718.106 (West 1988). This is indistinguishable from the definition of a tenancy in common: "A form of ownership whereby each tenant (*i.e.,* owner) holds an undivided interest in property." BLACK'S LAW DICTIONARY 1465 (6th ed. 1990).

moting the health, happiness, and peace of mind of all the unit owners. Le'Lisa has granted temporary use of a particular space to each unit owner, which we find more akin to the use restrictions upheld in *Juno By the Sea* and *Hobson*, rather than the permanent grant of exclusive use of a part of the common elements as seen in the takings cases of *Kaplan, Makeever*, and *Stuewe*.[8]

■ "[T]he appropriate standard of review for evaluating a condominium bylaw amendment containing a use restriction is reasonableness." *Ridgely Condo. v. Smyrnioudis*, 105 Md. App. 404, 422, 660 A.2d 942 (1995). Neither party contends that the restriction is unreasonable; therefore, the by-law amendment is sufficient to institute the parking system. *See* RP § 11–104(c).

### III.

■ Appellants argue in the alternative that Le'Lisa violated section 11–135 of the Maryland Condominium Act by not disclosing the parking system prior to the Alperts' closing date thereby estopping it from reassigning their parking space. Section 11–135(a) requires that certain disclosures be made by the condominium unit owner to a prospective purchaser not later than 15 days before closing. The unit owner must provide a copy of the declaration, the by-laws, rules and regulations, and a certificate containing information such as operating budget, insurance policies, and the existence of leasehold estates affecting the condominium. Section 11–135(c) requires the council of unit owners to furnish any unit owner who is considering selling a unit the certificate called for in subsection (a) and any other information the unit owner needs in order to comply with subsection (a). It further states

---

8. We recognize that a temporary taking "is not different in kind" from a permanent taking if it denies a landowner all use of his property. *See First English Evangelical Lutheran Church v. County of Los Angeles*, 482 U.S. 304, 318, 107 S.Ct. 2378, 2387–88, 96 L.Ed.2d 250 (1987). We merely note that the length of the granted use is a relevant factor to be considered in determining whether the regulation is a taking or a use restriction.

that a unit owner is not liable for any erroneous information provided by the council of unit owners and included in the certificate. Appellants argue that section 11–135(c) "makes it crystal clear" that Le'Lisa had a statutory duty to disclose the alleged parking policy.

Assuming, *arguendo*, that section 11–135 imposes a duty of disclosure on Le'Lisa, appellants' argument fails. As already noted, the parking system had never been properly promulgated. Le'Lisa cannot be required to disclose to appellant a rule that was never properly adopted and was thus invalid.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**