## Frederick Van Bibber and Mary E. Van Bibber's Lessee, vs. Ferdinand, Frazier and others.

In ejectment by one tenant-in-common against another, the defendant, if he wishes to deny ouster, must not enter into the general consent rule, but apply, on affidavit, for a special rule to confess lease, entry and not ouster.

Where a tenant-in-common enters upon land held in common, his entry is rightful, his possession is lawful, and his acts of ownership authorized, and no *inference* of adverse possession can be made from such facts.

Where one tenant-in-common is in possession, his co-tenant is, in contemplation of law, in possession also, and it is necessary to prove an actual ouster to rebut this presumption, and the *onus* of proving such ouster is on the party alleging it.

The actual ouster in such cases need not be proved to have been accompanied by positive force, but must be *brought home to the knowledge* of the co-tenant.

The mere fact that one tenant-in-common has been in exclusive possession for more than twenty years, and that he has in that time received all the profits, does not constitute actual ouster or adverse possession.

There must be some act which can amount to an ouster, or notice must be given to the co-tenant that the possession is adverse; one of the elements of adverse possession is, that it is a *hostile* invasion of another's rights; some positive act must show it.

Appeal from the Circuit Court for Allegany county.

*Ejectment,* for one undivided fourth of a tract of land called "Elk Garden," containing about 6000 acres, brought on the 18th of December 1856, by the appellant against the appellees.

The lessors of the plaintiff claim this undivided fourth as heirs at law of Andrew A. Van Bibber, whose title accrued in 1822, and who died in 1842, and concede that the defendants are entitled to the other three undivided fourths, deriving title thereto through Brice W. Howard, who, in 1831, purchased at sheriff's sale the interest of Henry P. Van Bibber in the land, and received the sheriff's deed therefor, dated the 7th of December 1831. The defendants, however, claim the *whole tract* by *adverse possession.* The pleadings in the

case are fully stated in the opinion of this court. At the trial *six* exceptions were taken by the plaintiff, all of which, except the last, relate to the admissibility of certain deeds offered on the part of the defendants, and the competency of the witnesses, Devecmon and Waltz, and need not be stated. ·The last exception was to the rejection of the plaintiff's prayers, nine in number, and the granting of the defendants' prayers, two in number, and it is only necessary to state the evidence in relation to *adverse possession,* which is, in substance, as follows:

The deed from the sheriff to Howard, dated the 7th of December 1831, after setting forth the judgments of condemnation on attachments against Henry P. Van Bibber, and the writs of *fi. fa.* thereon, commanding the sheriff to seize and sell "all the right, title, interest and estate of the said Henry P. Van Bibber, of, in and to the tract of land" called "Elk Garden," and the levy, sale, and purchase by Howard, conveys to the said Howard, his heirs and assigns, *"all the right, title and interest, both at law and in equity,* of said Henry P. Van Bibber, of, in and to said tract of land called Elk Garden, with its appurtenances, lying in Allegany county aforesaid, so as aforesaid sold in virtue of said writs of *fieri facias:* to have and hold *the said tract of land and premises, with its appurtenances,* by whatsoever name the same be called, unto him, the said Brice W. Howard, his heirs and assigns forever, to the only proper use and behoof of the said Brice W. Howard, his heirs and assigns, and to and for no other use, intent or purpose whatsoever."

*Smith* proved that in the winter of 1832, Howard was living on Elk Garden, and sent for and employed witness to run its lines, and he ran the eastern lines, next to the adjoining lots; that Howard built two houses on Elk Garden, and that one Shields lived on Elk Garden, as tenant for Howard, till his death, in October 1834; the improvement Shields made near the house he occupied, was not more than ten acres of cleared land, which was under fence and enclosed; there was another improvement on Elk Garden, made by Howard, and called Howard's Improvement, near the house

which he built, between ten and twenty acres, which was also fenced in and enclosed by Howard; there were also some thirty or forty acres cleared on Elk Garden, but not by Howard, so far as witness' knowledge extends; Elk Garden was a tract, at that time, of wild rough timber land, situated on the north branch, about nine miles from the head of the Potomac; Howard made a road from Shields' Improvement to Howard's Improvement; there was no person on the land during Howard's life, except Shields and one Harn, also Howard's tenant; Bosley was not there at the time of Howard's death, and witness does not think any one was, except Shields, and he left immediately on the death of Howard; witness was on Elk Garden very little after Howard's death—was there once or twice hunting; Howard, while in possession, claimed the whole tract, and changed the name from "Elk Garden" to "Howard's Manor," and expended a great deal of money on the land, in making the improvements spoken of.

*Waltz* proved that he had lived in the neighborhood of "Elk Garden" for thirty-four years; Howard took possession of it in 1832 or 1833, and had a road cut from the public road to his house; Howard built two houses on it, the first about two miles from the Shields house, and the second about two miles from the first, and cleared some forty or fifty acres about three-fourths of a mile from the house he first built; the deadening was not cleared, but grew up in young sprouts; a part of the deadening has been cleared in the last five or six years; on the Shields place there was about fifteen acres cleared and fenced; including the cleared land, there was about twenty acres under fencing; at the other improvements he fenced in and cleared some fifteen or twenty acres; some six, nine, or twelve months after Howard's death, witness took a lease of the entire tract from Andrew Bruce, the agent of Howard's devisees, and executor of his will; there was no one living on the land when witness got the lease; Harn, who had lived there in one of the houses Howard had built, as Howard's tenant, moved out about three weeks before witness got possession, having continued in possession from Howard's death till witness moved on the land; during

the time witness was in possession under this lease, there was no other person living on Elk Garden, or in possession of it. witness kept up the fences, cultivated the cleared parts, and used the balance of the whole tract for a pasture, herding his cattle on the land, and keeping all other cattle from trespassing on it, up to the time he left, in 1838 or 1840, when Bosley took possession; by the terms of his lease, he was to pay taxes, about $13 a year, and keep up the fences, and he paid no other rent; he was called upon by Armstrong, the agent of Howard's devisees, the former agent, Bruce, being dead, who wanted to rent it to him for another term, after the expiration of his lease, but demanding more rent than he was willing to give, witness refused to rent it, and Armstrong then rented it to Bosley, who took possession and occupied it; Chambers came to live with Bosley before witness left, being placed there to take care of Bosley's stock; Chambers occupied it till the sale by Howard's devisees to Harvey, in 1851, and kept possession up to the time Frazier and the other grantees under Harvey took possession, under their respective deeds; witness never heard of any claim to this property by the Van Bibbers, or any one else, except Bruce and Armstrong, the agents of Howard's devisees; there were no improvements put upon the property from Howard's death till Frazier took possession; the tax bills on the land during witness' lease, were all in the name of Howard's devisees. On further examination, this witness stated he could not remember the precise time he rented the land from Bruce; that at the time of making the lease, Bruce stated he was the agent for Howard's devisees, and the only knowledge witness had that Bruce was such agent, was from the declarations of said Bruce; that the said lease of witness extended into the year 1839.

*Bosley,* it was admitted, would prove that Howard, soon after his purchase, took possession of the land in 1831, under his purchase, claiming title to the whole tract; that Shields, who occupied one enclosure and improvement on said tract, rented the same from Howard, and occupied it as Howard's tenant; that Howard himself occupied the residue of the

land, living on the other enclosure, and claiming the land to the extent of the boundaries of the whole tract, and exercising acts of ownership over the whole by *sparsim cutting*, pasturage and general user; that on Howard's death, witness rented the land from the agent of Howard's devisees, and went into possession of the same as their tenant, occupying the land enclosed, and keeping up the fences on what was enclosed, and exercising acts of ownership over the entire tract by *sparsim cutting*, pasturage and general user, and so occupied the whole tract as such tenant till the sale by said devisees to Harvey, and that during all this time witness never knew or heard of any claim by the lessors of the plaintiff, or any other parties, to any part of said land, nor was he disturbed in his possession of any part thereof during the time he so occupied the same, and that he paid rent for the same to the said devisees during that time, and neither the lessors of the plaintiff nor any one else, ever claimed rent from him for said land, or any part thereof.

In reference to this statement of the testimony of Bosley, it was agreed that it should be admitted in evidence, but the plaintiff was not to be bound by it, but it was to have the same effect as if the witness was present in court, swearing to its truth, and it is understood that where in this statement it is set out that Howard claimed the whole of said tract, and exercised acts of ownership over the whole, and where the same is stated of his tenants and the tenants of his devisees, it is not intended to say the lessors of the plaintiff, or those under whom they claim, had actual notice of such possession or claim, otherwise than as such notice would be implied in law from the facts themselves.

The prayers on the part of the plaintiff assert, in substance, that the facts above stated do not constitute such an adverse possession on the part of the defendants, and those under whom they claim, as to bar the plaintiff's recovery of the undivided fourth part of this tract of land, while those on the part of the defendants assert that, from these facts, the jury may find that the possession of Howard, and those claiming under him, was adverse in its inception, and so continued

ever since, and that they may also find an actual ouster of Andrew A. Van Bibber by said Howard and those claiming under him, from the said tract of land.

The court granted the prayers of the defendants, and rejected those of the plaintiff, and the verdict and judgment being in favor of the defendants, the plaintiff appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*J. A. Wickes* and *Geo. A. Pearre,* for the appellants:

The testimony of the witnesses, Waltz, Smith and Bosley, states that Howard, in the year 1831 or 1832, took possession of "Elk Garden;" that he cleared some portion of the land, about sixty acres, deadened a small portion of timber, built two houses, and *claimed* the *whole* tract. Howard died in 1834, and there is no evidence that those claiming title under him were themselves in possession of this land, or that *they claimed* the whole. The first and main question in this case is, whether the possession of Howard was adverse or not? Howard and the appellants were tenants in common at the time he took possession, and so continued, unless they are barred by adversary possession, continuing for twenty years.

1st. The law is well settled, that the possession and seisin of one tenant in common is the possession and seisin of the other, because such possession is not adverse to the right of his companion, but in support of their common title. He has the legal right to enter upon the common property, to cultivate it, to build upon it, and to exercise every act of ownership. 4 *Kent,* 387. One tenant in common cannot bring an action of trespass against another, for entry upon and enjoyment of the common property; hence acts of ownership, cultivating land, building houses, &c., are not facts from which an adverse possession may be inferred. It is entirely different with a wrong doer, with one who enters without any right or title, he is a trespasser *ab initio*, and his acts of user and ownership are adverse, because wrongfully done. A mere silent possession and perception of profits, will not

Van Bibber's Lessee, *vs.* Frazier, *et al*

constitute an ouster. The tenant in common, who takes possession of property, does so rightfully. The title which he holds justifies his possession. He is equally entitled to take possession of the common property, to use it, to exercise acts of ownership over it, to inclose it, to cultivate it, as would be a sole owner. His rights are as extended, so far as the possession of the common property is involved, as they would be over property held in severalty. Who can arrest a tenant in common in the enjoyment of the common property? If he incloses it, is he guilty of trespass? and who can arrest him in his acts of ownership and user? He enters upon the land rightfully, his possession is lawful, his acts of ownership are authorised. How then can an *inference* of adverse possession be made from such facts? For the profits derived he may be called to an account *in equity.*

2nd. Whenever one tenant in common is in possession, his co-tenant is, in *contemplation of law*, in possession also, and it is necessary to prove an actual *ouster* to rebut this presumption, and the *onus* of proving this *actual ouster* is on the party alleging it. *Adams on Eject.*, 54. 4 *Kent*, 387, *Empsom vs. Shackleton*, 5 *Burr.*, 2604. It is true that an actual ouster need not be accompanied by actual force, but it must be proved by acts, or by declarations, brought home to the knowledge of the co-tenant. The mere fact that one tenant in common has been in exclusive possession of the property for more than twenty years, and that he has in that time received all of the profits, *will not constitute an actual ouster* or *adverse possession. Fisharr vs. Prosser, Cowp.*, 217. *Lloyd vs. Gordon*, 2 *H. & McH.*, 260. *McClung vs. Ross*, 5 *Wheat.*, 124. 3 *Met.*, 99, *Parker vs. Proprietors.* Why is it that the possession of one tenant in common for more than twenty years, receiving all of the profits, is not adverse? could any act be more adverse to the right of the co-tenant? It is because before an actual ouster exists it must be brought home to the knowledge of the co-tenant that his title is denied. The presumptions of law are all in his favor, the law will not presume, without evidence, that any man intends to do an unlawful act, but will presume that every man,

having a right of entry or possession, enters or occupies according to his title. An actual ouster may be proved by evidence, that a party refused to suffer his companion or his agent to enter, and *denied* his title, retaining exclusive possession—or where his co tenant claims possession, denies his title. *Bracket vs. Norcross*, 1 *Greenlf.*, 91. *Hellings vs. Bird*, 11 *East.*, 48. So also where the interest of one tenant in common was sold at sheriff's sale, and the purchasers conveyed to others, who were in possession for twenty-seven years, *without acknowledging* the title of the other co-tenants, it was held *not* sufficient to create a presumption of an ouster. *Northrop vs. Wright*, 24 *Wend.*, 224, 225. In the language of Chief Justice Marshall in *McClung vs. Ross*, there must be some "act which can amount to an ouster, or give *notice* to his co-tenant that his possession is adverse"—and in the language of the Court of Appeals in *Lloyd vs. Gordon*, the co-tenant must be "*actually put out*, or his title to hold in common uniformly denied." The language used by Lord Mansfield in *Fishar vs. Prosser* is, that a refusal to pay a co-tenant his part of the rent or profits, without *denying* his title, is not sufficient. The facts proved by the witnesses, (supposing, for the present, that a *continuous* possession had been proved, which we deny,) were acts of user and ownership, by Howard, such as cultivating the land, building two houses, and a *claim* by Howard to the whole tract. The acts of ownership are not facts legally sufficient to warrant an ouster, and the only testimony which can go to show this actual ouster, is the claim of Howard to the whole tract. There is no testimony to show that Andrew A. Van Bibber, under whom the appellants claim, knew of this claim of Howard; on the contrary, the witnesses state that they were *ignorant* of Van Bibber's title, and there is no testimony to show that Howard had any knowledge of it. One of the elements of title by adverse possession is, that it is a *hostile* invasion of another's rights. *Armstrong vs. Risteau*, 5 *Md. Rep.*, 257. Some positive act must show it, *Matthews vs. Ward*, 10 *G. & J.*, 457. We have in this case nothing but the statement of one or two witnesses ignorant themselves of Van Bibber's

title, stating, that Howard claimed the whole—can a bare claim, not brought to the knowledge of another, a claim of which he was ignorant, a declaration made in a mountainous region, unfrequented almost by man, be considered a hostile invasion of a right? The land was then worthless almost, being nearly 6000 acres of wild land. Howard living but three years after he purchased, his declaration of claiming the whole, to two or three visitors, unsupported by any other fact, cannot warrant a jury in finding an actual ouster, or adverse possession. *To be a "hostile invasion" of Van Bibber's right, he must know it,* else it would be in the power of every tenant in common, by a simple declaration of his claim to his neighbors, to oust his companion. The analogies of the law will sustain this position. Take the case of a party who loans or hires a slave to another; it makes no matter how long the borrower or hirer may continue in possession, and although he may claim title to the property and claim to hold adversely to the owner, yet it will be no bar to an action of replevin on the part of the owner, unless the party who claims adversely can bring the *fact* of the adverse claim to the *knowledge* of the owner. *Callis vs. Tolson,* 6 *G. & J.,* 92. *Cole vs. Hebb,* 7 *G. & J.,* 20. So with the tenant in common; he takes possession of the property under the sanction of law; possession is his right, he may rightfully continue that possession, and if he claims adversely, he must establish by positive proof, or by facts, which will justify the jury in finding that his co-tenant, out of possession, knew that the one in possession, claimed to hold adversely. It cannot be compared to the possession of a wrong doer, to the possession of one who enters without any claim or title—in the latter case the wrong-doer takes possession tortiously, the possession itself is adverse, and the burthen of proof is on the party claiming to show that it was not. The testimony also shows, that Howard was ignorant of the Van Bibber title. The witnesses state that they never heard of it, and there is no testimony to show that Howard knew it. The case of *Cresap vs. Hutson,* 9 *Gill,* 269, decides, that where one is ignorant of another's title there can be no adverse holding.

Van Bibber's Lessee, *vs.* Frazier, *et al.*

The very nature of an adverse holding is, that it is a denial of another's rights, there can be no denial of a right of which a party is ignorant. The fact that one tenant in common is in possession, ignorant of the title of a co-tenant, but believing the whole is vested in him, cannot constitute that possession an adverse holding; something positive must exist, an intention to oust his co-tenant must be in his mind; that intention cannot be existing when he is ignorant of the co-tenancy.

3rd. To give a title by possession it must be adverse, exclusive and *continuous* for twenty years. In *Stump vs. Henry*, 6 *Md. Rep.*, 201, the court say, "that where a right of possession exists, such right could not be barred by possession alone, unless it should be adverse, exclusive and continuous, for at least twenty years. And any recognition or acknowledgment of such right by the party in' possession, will prevent his possession from operating as a bar to such right, until *twenty* years *after* the acknowledgment has been made." The adverse holding may have begun, yet a recognition of a right will arrest the statute, and it must *again* begin from the time of the recognition. In other words, it must be continuous—no break in it. It can not be inferred but must be proved in the case of co-tenants. We have in this case no such proof; there is nothing from which to infer it—Howard took possession in 1831, he died in 1834. The single fact upon which his adverse holding is based, is his claim to the whole. There is no proof to show that those immediately claiming under him, ever claimed it. Smith simply states, that Howard claimed it, but states nothing of those claiming under Howard. Waltz says, he "never heard of any claim by the Van Bibbers, or any other persons, except Bruce and Armstrong the agents of the devisees of Howard." Bosley does not state that those claiming title from Howard claimed the whole. Supposing that Howard's claim to the whole was a fact to justify the jury in finding adverse possession, can an inference be made that those succeeding, also claimed the whole, and hence held adversely in the absence of all proof? No inference of the kind can be made

against a co-tenant. *Prima facie* the possession of one is the possession of all, unity of possession is the distinguishing feature of a co-tenancy. It must be positively proved not only that Howard held adversely, (by claiming the whole,) but that his devisees also so held without any interruption for twenty years. The case of *Russell vs. Baker*, 1 *H. & J.*, 71, establishes this.

Bosley did not rent until Waltz's lease had expired. If the testimony of Waltz was admissible, yet he did not lease or take possession until *at least* six months after Howard's death. Here is a *hiatus*, a breach in the adverse possession. Bruce was not in possession; and continued *actual* possession must exist. Bosley was not in possession until the lease of Waltz expired, which was not until 1838 or 1840. Although in the statement of Bosley's testimony it is set forth, "that on Howard's death, Bosley rented from Howard's devisees," it *is not* stated that he rented from such agent *immediately* after the death of Howard. Waltz says, he occupied it as lessee until 1838 or 1840, and that Bosley did not rent the property until his lease expired. There is no contradiction, but it is established without any conflict, that Bosley was not in possession until certainly 1838, four years, at least, after the death of Howard. If Waltz's testimony was inadmissible, then the only possession of the appellees, or of those under whom they claim, was that of Bosley in 1838 or 1840, destroying the *continuity* of the *adverse possession*.

*Henry Bruce* and *Thos. Devecmon*, for the appellees:

For all the purposes of this appeal, it may be assumed that the lessors of the plaintiff showed a complete *paper title* to the one undivided fourth of this land. The defendants are conceded to be the owners of three undivided fourths, and they claim the other fourth in controversy in this case by *adverse possession*, and they insist that their two prayers, submitting upon the facts the question of ouster or no ouster, to the jury, contain the true law of the case, and were properly granted, and as those of the plaintiff were in direct opposition, they were rightfully rejected.

1st. The original entry in this case was under color of title, viz., the deed from the sheriff to Howard, which, in its. *habendum* clause, conveys the *whole tract* to the grantee therein. The possession, therefore, need not be by actual enclosures of the entire tract, but being under color of title, it extended to the entire boundaries of the tract, and this would be so even though the writing which constituted the color of title was void and good for nothing, which is not the case here, and, *a fortiori*, this case is much stronger.   *5 Md. Rep* , 238, *Hoye vs. Swan.*   1 *Gill*, 500, *Casey vs. Inloes.* 10 *Verm.*, 35, *Crowell vs. Bebee.*   5 *Pet.*, 319, 354, *Clarke vs. Courtney.*   3 *Strob.*, 498, *Gray vs. Bates.*

2nd. It is true that the possession of one tenant in common *recognizing the title* of his co-tenant, is, in legal contempla- tion, the possession of all, yet it is equally true that one ten- ant can oust his co-tenant, and hold adversely against him. The question of ouster is not one of law, but of fact for the jury, and it may be inferred by the jury from the facts and circumstances.   *Adams on Eject.*, 55, 56, and *notes.*   8 *Smedes & Mar.*, 90, *Grafton vs. Grafton.*   4 *Grattan*, 22, *Purcell & Wife, vs. Wilson.*   10 *Verm.*, 593, *Hall vs. Dewey.* 10 *Mass.*, 468, *Cummings vs. Wyman.*   2 *Greenlf.*, 242, *Little vs. Libby.*

3rd. What facts will not authorize the jury to find an ouster?   Mere silent possession, recognizing title of co-tenant, or bare receipts of rents and profits, are not sufficient to autho- rize a jury to presume or find an ouster; nor will the *mere running* the lines of a tract, where the party claims no title. The cases on the part of the appellant go to this extent, and no further.   In 5 *Burr.*, 2608, the party always admitted the other's title.   In *Stump vs. Henry*, 6 *Md. Rep.*, 202, Richie admitted the title, and it is placed on that ground.   In *Mat- thews vs Ward*, 10 *G. & J.*, 457, it was held, there must be some *positive* act, and not a *mere* failure to recognize the other's title.

4th. What facts are sufficient to authorize the jury to find an ouster?   1st. Long continued possession, without any de- mand of rents, or acknowledgment of title or claim made by

plaintiff. *Cowp.*, 218, *Fishar vs. Prosser.* 9 *Watts*, 363, *Mehaffy vs. Dobbs.* 6 *Cowen*, 633, *Jackson vs. Whitbeck.* 1 *Caines' Rep.*, 84, *Van Dyck vs. Van Buren.* 5 *Day*, 188, *Bryan vs. Atwater.* 1 *Greenlf.*, 91, *Bracket vs. Norcross.* 6 *Dana*, 432, *Chambers vs. Pleak.* 2nd. The entry of one claiming the *whole* to himself, is adverse. *Adams on Eject.*, 56. 5 *Day*, 188. 8 *B. Munroe*, 186, *Gill, et al., vs. Fauntelroy's heirs.* 4 *Dev.*, 291, *Cloud vs. Webb.* 3rd. So if one sell the whole, and possession be held adversely for twenty years, the sale and possession amount to an ouster. 13 *Sergt. & Rawle*, 358, *Culler vs. Motzer.* 17 *Pick.*, 246, *Rittredge vs. Locks & Canals.* 13 *Johns.*, 406, *Jackson vs. Smith.* 10 *Pick.*, 161, *Bigelow vs. Jones.* 4th. The making of improvements, such as buildings, fences, &c., is another circumstance from which, with others, ouster may be inferred. 10 *Mass*, 468, *Cummings vs. Wyman.* 3 *Strob.*, 498, *Gray vs. Bates.* 3 *How.*, 689, *Clymer vs. Dawkins.* 4 *Mason*, 329, *Prescott vs. Nevers, et al.* 5th. One tenant in common cannot maintain ejectment against his co-tenant, unless there be an actual ouster. 7 *Cranch.*, 456, *Barnitz' lessee, vs. Casey. Adams on Eject.*, 91. Now if the facts proved do not authorize the jury to infer an ouster, the plaintiff could not maintain ejectment. When did this ouster arise? If it ever existed at all, it was more than twenty years before suit brought.

5th. No *actual* notice was necessary to be proved of an adverse holding. In this case the original entry was not by *permission* or consent of plaintiff. It was adverse in its inception, being made under claim of title to the whole. Being hostile at the start, no actual knowledge was necessary to be proved, for its notoriety, &c., in law, brings it home to the lessors of the plaintiff. 2 *Greenlf. on Ev.*, sec. 430. 6 *Pick.*, 178, *Poignard vs. Smith.* The cases in 6 *G. & J.*, 92, and 7 *G. & J.*, 20, cited on the other side, were cases in which possession commenced by *consent;* of course it could not become adverse except by notice, but that is not the case here, for it was hostile in its inception.

It is submitted, therefore, upon these authorities, that the

two prayers of the defendant were properly granted. They submit the question of *ouster* to the jury, as one of fact, to be found by them; and the authorities cited show that from these facts they *might* find the ouster. If they did not find it, of course the plaintiff could not recover; but still it was competent for them so to find.

*Note.*—The arguments on other points on both sides are omitted.

GOLDSBOROUGH, J., delivered the opinion of this court:

This is an action of ejectment, brought in the circuit court for Allegany county by the appellants, on the 18th day of December 1856, to recover one undivided fourth part of a tract of land called "Elk Garden," containing about six thousand acres of land lying in Allegany county.

The lessors of the plaintiff claim this undivided fourth part of the said tract, as the heirs at law of Andrew Van Bibber, and concede that the defendants are entitled to the other three-fourths, tracing their title through Henry P. Van Bibber and a certain Brice W. Howard.

The defendants came into court and having under the consent rule, confessed lease, entry and actual ouster, pleaded the general issue, and prayed the court for a warrant of resurvey. The warrant was accordingly issued, and the surveyor returned his certificate of resurvey. There being no question as to location, the plats and certificates form no part of this record.

While the defendants concede that the plaintiff has the paper title to the property in controversy, they yet maintain, that the plaintiff's lessors are barred from recovery by the adverse possession of the defendants, and of those under whom they claim.

At the trial below, the defendants to sustain the issue on their part, offered sundry deeds mentioned in the record, to the admissibility of which the plaintiff excepted. They also offered the evidence of Thomas Devecmon and William Waltz, to which the plaintiff also excepted. The plaintiff's

lessors then presented to the court nine prayers, and the defendants two prayers. The court rejected each of the plaintiff's prayers, and granted those of the defendants; to which ruling of the court, the plaintiff excepted. And the verdict and judgment being for the defendants, the plaintiff appealed to this court.

The lessors of the plaintiff, and the defendants or those under whom they claim, standing in the relation of tenants in common, it would have been necessary for the plaintiff in the absence of the confession by the defendants, of lease, entry and actual ouster, to prove the ouster to entitle him to recover. In the case of *Tongue vs. Nutwell,* (*ante* 212,) decided by this court at the present term, the rule laid down in *Dorsey on Eject., page* 16, sustained by *Adams on Ejectment,* 263, was recognized and approved; that "the defendant ought to have applied to the court upon affidavit for a special rule to confess lease, entry and not ouster. And if the tenant in common, &c., acknowledges the ouster, he will be precluded from denying, or, in other words, of showing, that the plaintiff has not been injured."

Regarding this case as dependent on the question of adverse possession alone, and conceding that the written and parol evidence excepted to, was properly permitted to go to the jury; yet we are of opinion, that the court below erred in rejecting the prayers of the plaintiff, and as the prayers of the defendants are but the converse of those of the plaintiff, they ought to have been rejected.

The witnesses Waltz, Smith and Bosley, upon whom the defendants rely to show an adverse possession, state that Howard, in the year 1831 or 1832, took possession of "Elk Garden," that he cleared some portion of the land, about sixty acres, deadened a small portion of the timber, built two houses, and *claimed* the *whole* tract; yet there is no evidence that those claiming title under him, were ever in possession or that they claimed the whole, nor is there any evidence to show, that Howard's claim was ever brought to the knowledge of the lessors of the plaintiff, or to the knowledge of those under whom they claim.

It is a familiar principle of law, that a tenant in common enters upon land held in common, rightfully, that his possession is lawful, and his acts of ownership are authorised, and no *inference* of adverse possession can be made from such facts.

Whenever one tenant in common is in possession, his co-tenant is, in contemplation of law, in possession also, and it is necessary to prove an actual ouster to rebut this presumption, and the *onus* of proving the *actual* ouster, is on the party alleging it. *Adams on Eject.*, 54. 4 *Kent*, 387. The actual ouster need not be proved to have been accompanied by positive force, but must be established by acts or declarations, *brought home* to the knowledge of the co-tenant. The mere fact that one tenant in common, has been in exclusive possession of property for more than twenty years, and that he has in that time, received all of the profits, will not constitute an actual ouster or adverse possession. *Lloyd vs. Gordon*, 2 *H. & McH.*, 260. *McClung vs. Ross*, 5 *Wheat.*, 124.

In *Northrop vs. Wright*, 24 *Wend.*, 224, 225, it was held, that where the interest of one tenant in common was sold at sheriff's sale, and the purchasers conveyed to others, who were in possession for twenty-seven years, without acknowledging the title of the other co-tenants, it was not considered sufficient to create the presumption of an ouster. Chief Justice Marshall, in *McClung vs. Ross*, 5 *Wheat.*, 124, says, there must be some "act which can amount to an ouster, or notice must be given to his co-tenant that his possession is adverse."

One of the elements of title by adverse possession is, that it is a *hostile* invasion of another's rights. *Armstrong vs. Risteau's lessee*, 5 *Md. Rep.*, 257. Some positive act must show it. 10 *G. & J.*, 457.

We regard these principles of law as applicable to this case, and the prayers of the plaintiff fully sustained by them and the authorities cited. They ought therefore to have been granted, and the defendants' rejected.

*Judgment reversed and procedendo awarded.*