843 A.2d 865

Harold C. JURGENSEN

v.

The NEW PHOENIX ATLANTIC CONDOMINIUM COUNCIL OF UNIT OWNERS.

No. 63, Sept. Term, 2003.

Court of Appeals of Maryland.

March 5, 2004.

James W. Almand (Ayres, Jenkins, Gordy & Almand, P.A., of Ocean City), on brief, for petitioner.

Joseph E. Moore (Christopher T. Woodley of Williams, Moore, Shockley & Harrison, L.L.P., of Ocean City), on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and JOHN C. ELDRIDGE, (retired, specially assigned), JJ.

CATHELL, Judge.

This case concerns a condominium unit owner's use of a designated parking space on the condominium property and whether he acquired exclusive use of that parking space based upon the legal theories of easement by prescription or estoppel.

On March 9, 2000, Harold C. Jurgensen, petitioner, filed a five-count "COMPLAINT FOR INJUNCTIVE AND RELATED RELIEF" against The New Phoenix Atlantic Condominium Council of Unit Owners, respondent, in the Circuit Court for Worcester County. On May 26, 2000, petitioner filed a five-count "AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, TO QUIET TITLE AND RELATED RELIEF." In his complaint, petitioner was seeking a declaration that the owners of Unit 505 had the exclusive right to utilize parking space 32. Respondent filed an Answer, a Motion for Summary Judgment, and an Amended Motion for Summary Judgment.

Following a hearing on January 19, 2001, the Circuit Court issued a one-page Order on February 7, 2001, granting summary judgment for Respondent. Petitioner then filed an appeal to the Court of Special Appeals. In the Court of Special Appeals, the parties filed a Joint Motion to Remand the Case, which was granted by the Court on December 26, 2001.

Upon remand, respondent filed a Motion to Dismiss, to which petitioner filed a response. After a hearing on March 22, 2002, the Circuit Court granted the motion as to Counts IV (Estoppel) and V (Breach of Fiduciary Duty).

The three remaining counts of petitioner's Amended Complaint[1] were addressed at a subsequent hearing on July 17, 2002. By Opinion and Order dated August 16, 2002, Judge Eschenburg of the Circuit Court granted summary judgment on the remaining counts in favor of respondent. Petitioner then appealed to the Court of Special Appeals. On June 13, 2003, in an unreported opinion, the intermediate appellate court affirmed the judgment of the Circuit Court. Petitioner then filed a Petition for Writ of Certiorari with this Court, and, on September 10, 2003, we granted the petition. *Jurgensen v. New Phoenix*, 377 Md. 111, 832 A.2d 204 (2003). Petitioner presents one question for our review:

"Can a condominium unit owner acquire exclusive use of a general common element based upon easement by prescription or estoppel?"

We hold that, under the facts of the case *sub judice*, petitioner did not acquire the exclusive use of a general common element of a condominium based upon the legal theory of an easement by prescription.

We also hold that the doctrine of equitable estoppel, even if applicable, is not appropriate in this instance. Respondent cannot be said to have acted in such a manner as to give petitioner the impression that he had an exclusive interest in the parking space. Furthermore, petitioner had the ability to view the Condominium Declaration and other documents, which did not grant petitioner an exclusive interest in the parking space.

## I. Facts

The New Phoenix Atlantic Condominium ("Condominium") is located in Ocean City, Maryland, and consists of 36 residential units. The Condominium was established by declaration, bylaws and plats recorded among the land records of Worcester County in March 1975. The New Phoenix Atlantic Condominium Council of Unit Owners, respondent, is the unincorpo-

---

1. These three remaining counts being those for declaratory judgment, to quiet title, and for breach of contract.

rated association of all unit owners that was established by the bylaws to govern the Condominium.[2]

When the Condominium was established in 1975, the recorded Plats and Plans of the Condominium showed 31 parking spaces on Condominium property and each space was designated by the developers as a limited common element for the exclusive use of one specific unit at the time of the initial sale of each unit.[3] The rights to use these 31 spaces were considered appurtenances to the units to which they were assigned.[4] Unit 505 was one of five units originally without a dedicated parking space on Condominium property. Before the first transfer of Unit 505, however, the developers of the Condominium created two new parking spaces on Condominium property, identified as parking spaces number 32 and 33. A sign was thereafter posted on parking space number 32 designating it as parking for Unit 505. The Condominium Declaration was never amended to reflect the existence of parking spaces 32 and 33. From 1976 until 1999, 23 years in total, three successive groups of owners of Unit 505 apparently used parking space number 32.

Harold C. Jurgensen, petitioner, acquired title to Unit 505 of the Condominium by virtue of a recorded deed dated

---

**2.** Md.Code (1974, 2003 Repl.Vol.), § 11–109(a) of the Real Property Article concerns the purposes and membership of a condominium council of unit owners. It states:

"(a) *Legal entity; composition.*—The affairs of the condominium shall be governed by a council of unit owners which, even if unincorporated, is constituted a legal entity for all purposes. The council of unit owners shall be comprised of all unit owners."

**3.** Article III, Section 1 of the Condominium Declaration is entitled "Limited Common Elements" and states that "[t]he Limited Common Elements are those designated as such on the Record Plats and Plans by appropriate designation as Limited Common Elements and all such elements are reserved for the exclusive use of the Condominium Unit or Units designated thereon...." Section 1(b) makes mention of "thirty-one (31) automobile parking spaces located in the Common Areas...."

**4.** Article III, Section 1(b) of the Condominium Declaration provides that "[t]he right to the use of such [parking] space cannot be separated from the Unit to which it is assigned but shall be considered an appurtenance to such Unit." (alterations added).

December 28, 1984. Thereafter, petitioner used parking space number 32. Petitioner enjoyed the use of this parking space for many years, but, beginning in the fall of 1999, respondent, by its board of directors,[5] reconfigured a portion of the Condominium parking area, thereby reducing the size of space number 32.[6] Despite petitioner's protests, respondent completed this reconfiguration in 2000.

Petitioner sued respondent for breach of contract and promissory estoppel. He looked upon the Condominium's action with respect to parking space number 32 as an unwarranted invasion of a property right belonging exclusively to him as the owner of Unit 505. Six months after filing the last amendment to his complaint, however, petitioner, in June 2001, sold Unit 505. Petitioner claims that the Condominium's action in not continuing Unit 505's exclusive right to use the parking space and its actions in reconfiguring the parking area, and thereby decreasing the size of parking space number 32, unfairly created a situation in which he was unable to sell his Unit for the price it would have sold for had the parking space retained its original dimensions.[7]

## II. Standard of Review

■ An appellate court reviews a trial court's grant of a motion for summary judgment *de novo*. *Todd v. MTA*, 373

---

5. Md.Code (1974, 2003 Repl.Vol.), § 11–101(b)(1) of the Real Property Article defines "Board of directors," in the context of a condominium, as follows:

 "(b) *Board of directors.*—(1) 'Board of directors' means the persons to whom some or all of the powers of the council of unit owners have been delegated under this title or under the condominium bylaws."

6. It is undisputed that parking space number 32, as it existed until its reconfiguration in 1999, was larger than the other parking spaces in the Condominium parking area. The space itself was twenty-two feet six inches by thirteen feet three inches (22'6" × 13'3").

7. The record reflects that when petitioner put Unit 505 up for sale in June 2001, he listed it for $199,999. It sold that same month for $199,900. This sale price was, at the time of the sale, the highest price ever paid for a unit in the Condominium. Nevertheless, petitioner's claim for damages, grounded in this allegation, causes this matter to survive mootness analysis.

Md. 149, 154, 816 A.2d 930, 933 (2003); *Beyer v. Morgan State Univ.* 369 Md. 335, 359, 800 A.2d 707, 721 (2002); *Schmerling v. Injured Workers' Ins. Fund,* 368 Md. 434, 443, 795 A.2d 715, 720 (2002); *see also Fister v. Allstate Life Ins. Co.* 366 Md. 201, 210, 783 A.2d 194, 199 (2001). "The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law. The standard of appellate review, therefore, is whether the trial court was legally correct." *Williams v. Baltimore,* 359 Md. 101, 114, 753 A.2d 41, 48 (2000) (internal citations omitted) (quoting *Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 42–43, 656 A.2d 307, 311 (1995)); *see also Eng'g Mgmt. Servs. v. Md. State Highway Admin.,* 375 Md. 211, 229, 825 A.2d 966 (2003) ("[w]hether summary judgment is properly granted as a matter of law is a question of law. The standard for appellate review of a summary judgment is whether it is 'legally correct.' ").[8]

 When reviewing a grant of summary judgment, we must make the threshold determination as to whether a genuine dispute of material fact exists, and only where such dispute is absent will we proceed to review determinations of law. *See Todd,* 373 Md. at 154–55, 816 A.2d at 933; *Beyer,* 369 Md. at 359–60, 800 A.2d at 721; *Schmerling,* 368 Md. at 443, 795 A.2d at 720. In so doing, we construe the facts properly before the court, and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party. *Todd,* 373 Md. at 155, 816 A.2d at 933 (citing *Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118, 127 (2000)).

---

**8.** The Court of Special Appeals, in its unreported opinion of this case, stated that:

> "It was that relinquishment by [petitioner] of any interest in Unit 505 or in Parking Space # 32 (if such an interest existed) that caused [the Circuit Court] to grant the [respondent's] Motion to Dismiss as moot Counts Four and Five.... We will, therefore, treat the granting of the Motion to Dismiss as the granting of a Motion for Summary Judgment."

We shall do the same.

### III. Discussion

### A. The Maryland Condominium Act

■ Although petitioner contends that he has acquired the exclusive use of parking space number 32 based upon easement by prescription or equitable estoppel, it is necessary for this Court to first examine the numerous statutes that embody the law relating to condominiums in Maryland. The Maryland Condominium Act, Maryland Code (1974, 2003 Repl.Vol.), §§ 11–101 et. seq. of the Real Property Article,[9] regulates the formation, management, and termination of condominiums in Maryland. It is with the application of Maryland Condominium Act principles that we shall determine, first and foremost, whether parking space number 32 is to be classified as a general common element of the Condominium.[10] Then, and only then, can we determine whether petitioner has any exclusive interest in the parking space.

Petitioner, as an owner of a unit in the Condominium, is deemed under the Maryland Condominium Act to own an undivided percentage interest in the common elements of the Condominium. *See* § 11–107(a). Therefore, in regard to the common elements, petitioner can be said to have a tenancy in common in the general common elements with all of the other Condominium unit owners. As this Court explained in *Ridgely Condominium Ass'n, Inc. v. Smyrnioudis*, 343 Md. 357, 681 A.2d 494 (1996):

> "A condominium is a 'communal form of estate in property consisting of individually owned units which are supported by collectively held facilities and areas.' *Andrews v.*

---

**9.** Hereinafter, except where otherwise indicated, all statutory references are to Md.Code (1974, 2003 Repl.Vol.), §§ 11–101 et. seq. of the Real Property Article, otherwise known as the Maryland Condominium Act.

**10.** Although petitioner, in his "Question Presented," appears to classify parking space number 32 as a general common element of the Condominium, his arguments on brief suggest otherwise; he contends that the space is a limited common element, albeit an "imperfect" one.

*City of Greenbelt,* 293 Md. 69, 71, 441 A.2d 1064, 1066 (1982).

'The term condominium may be defined generally as a system for providing separate ownership of individual units in multiple-unit developments. In addition to the interest acquired in a particular apartment, each unit owner also is a tenant in common in the underlying fee and in the spaces and building parts used in common by all the unit owners.'

4B Richard R. Powell, *Powell on Real Property* ¶ 632.1[4] (1996). A condominium owner, therefore, holds a hybrid property interest consisting of an exclusive ownership of a particular unit or apartment and a tenancy in common with the other co-owners in the common elements."

*Ridgely,* 343 Md. at 358–59, 681 A.2d at 495. *See also Starfish Condominium Ass'n v. Yorkridge Service Corp.,* 295 Md. 693, 703, 458 A.2d 805, 810 (1983) (stating that "[i]n a condominium regime unit owners own the common elements in fee as tenants in common."). Section 11–101(c) of the Real Property Article defines what is meant by the term "common elements." It states:

"(c) *Common elements.*—(1) 'Common elements' means all of the condominium except the units.

(2) 'Limited common elements' means those common elements identified in the declaration or on the condominium plat as reserved for the exclusive use of one or more but less than all of the unit owners.

(3) 'General common elements' means all the common elements except the limited common elements."

It is undisputed that the area of the Condominium property deemed to be parking space number 32 is not identified as a parking space or separate area on either the recorded Declaration or Plats and Plans. Those 31 original parking spaces that can be found in the recorded Condominium plats are deemed limited common elements under the Maryland Condominium Act, *but no action was ever taken to make parking space number 32 such a limited common element.* It certain-

ly was never "identified in the declaration or on the condominium plat" as a limited common element. Therefore, by its nature, the area upon which parking space number 32 is laid out physically is (and at all times relevant here) properly classified as a general common element of the Condominium.

Because we hold that the area of parking space number 32 is to be classified as a general common element of the Condominium, it follows that petitioner, and his successors and assigns,[11] cannot seek exclusive rights to the parking space that he was permitted to use while he owned Unit 505. He is (or was) a percentage owner of all general common elements

---

**11.** Petitioner, in the present case, in his brief, asserted that his successors and assigns should have exclusive rights to the parking space. They, however, are not named parties to this case.

In our recent case of *Park Station Limited Partnership, LLLP v. Bosse*, 378 Md. 122, 835 A.2d 646, filed November 13, 2003, we were asked to address the effect of the absence of the use of the words, *successors and assigns* on the applicability of the Rule Against Perpetuities, in a paragraph that created a right of first refusal to purchase real property that was in a contract involving the conveyancing of rights to land. Other paragraphs in the same contract included the words, *successors and assigns*. Neither of the parties in that case referred this Court to the provisions of Real Property Article, Section 1–103, but argued to this court the meaning of the absence of the particular words in the one paragraph when they were present in other paragraphs of the contract. And that was the only issue we addressed. Real Property Article, Section 1–103 was neither presented nor addressed in *Park Station* and nothing in *Park Station* was intended to, or did, affect the applicability of that statute.

Real Property Article, Section 1–103, as now codified, provides:
" § 1–103. Successors in interest.

Unless otherwise expressly provided, any obligation imposed on or right granted to any person automatically is binding on or inures to the benefit of his assigns, successors, heirs, legatees, and personal representatives. However, this section is not to be construed to create or confer any rights of assignment where none would exist otherwise."

(The caption in the bill when this provision was first adopted merely said "Successors." The phrase "in interest" was apparently added by codifiers sometime after 1972. The particular language noted above was first added to the statutes of Maryland in 1972 by Section 1–104 of House Bill 439 which ultimately became, upon subsequent revision and codification, a part of Chapter 12 of the Laws of Maryland 1974.)

Real Property Article, Section 1–103 remains applicable in all respects wherever, and whenever, it was applicable prior to our discussion in *Park Station*.

of the Condominium, as are all unit owners, but he never formally acquired exclusive rights to parking space number 32. Numerous reasons support this conclusion. First, § 11-107(a) of the Real Property Article specifically forbids any unit owner from bringing an action for partition of the general common elements of a condominium. Section 11-107(a) states that:

"(a) *Undivided percentage interest in common elements.*— Each unit owner shall own an undivided percentage interest in the common elements equal to that set forth in the declaration.[12] Except as specifically provided in this title, the common elements shall remain undivided. Except as provided in this title, no unit owner, nor any other person, may bring a suit for partition of the common elements, and any covenant or provision in any declaration, bylaws, or other instrument to the contrary is void."

Secondly, the 1974 Condominium Declaration, in Article V, Section I, likewise prohibits any unit owner from bringing an action for partition of a common element.[13] That section, in full, states:

"*Section 1. Covenant Against Partition.* The Common Elements, both General and Limited, shall remain undivided and appurtenant to the designated Unit. No Owner of any Condominium Unit or any other person shall bring any action for partition or division thereof except as may be provided for in The Real Property Article, Section 11-107, Annotated Code of Maryland."

In essence, however titled, petitioner's complaint seeks, in the context of condominium law, to partition a general common element—to divide it.

---

12. An attachment to the Condominium Declaration states that Unit 505 has a 2.588% interest under the heading "PERCENTAGE INTEREST APPURTENANT TO EACH UNIT."

13. Partition is defined as "[t]he act of dividing; esp., the division of real property held jointly or in common by two or more persons into individually owned interests." BLACK'S LAW DICTIONARY 1141 (7th ed.1999).

Thirdly, this Court's holding in *Ridgely, supra,* is directly contrary to petitioner's position that his parking space, originally a general common element of the Condominium, later became a limited common element by the actions of the Condominium developers.[14] In *Ridgely,* we stated that "unanimous consent of the [unit] owners is required for some amendments [to the declaration], such as altering percentage interests in common elements, changing the use of units from residential to nonresidential and vice versa, *and redesignating general common elements as limited common elements.*" *Ridgely,* 343 Md. at 360–61, 681 A.2d at 496 (alterations added) (emphasis added).

Section 11–103(c)(1)(iv) of the Real Property Article, which concerns condominium declarations, is also relevant to this issue. The statute states that:

"(c) *Amendments or orders of reformation.*—(1) Except for a corrective amendment under § 11–103.1 of this title or as provided in paragraph (2) of this subsection, the declaration may be amended only with the written consent of 80 percent of the unit owners listed on the current roster. Amendments under this section are subject to the following limitations:

. . .

(iv) Except as otherwise expressly permitted by this title and by the declaration, *an amendment to the declaration may not redesignate general common elements as limited common elements without the written consent of every unit owner or mortgagee.*" (emphasis added)

---

**14.** Petitioner, in his own words, acknowledges that "[w]hile space no. 32 may not be a limited common element *per se,* it certainly is an *imperfect* one. . . ." Neither the Maryland Condominium Act, nor this Court, recognizes the legal significance of an "imperfect" limited common element. To put it simply, something either *is* a limited common element or it *is not.* Condominiums, and their creation, are, in the main, controlled by statute where statutes exist, as in Maryland. The Maryland statutes recognize no such creature as an "imperfect" limited common element.

Once again, the Condominium Declaration has similar language prohibiting amendments without unanimous consent. Article VI, Section 3 of the Declaration states:

"*Section 3. Amendment.* This Declaration may be amended only with the written consent of every Unit Owner and Mortgagee and any amendment shall become effective only when recorded among the Land Records where this Declaration is recorded."

In the case *sub judice,* the unanimous written consent of all unit owners to grant Unit 505 exclusive rights to parking space number 32 was never given. Unit 505's use of the space was merely permitted by the Condominium developers and acquiesced in thereafter by the Condominium. Therefore, the area underlying parking space number 32 remains, as it has been since its creation, a general common element of the Condominium. The parking space is owned, and thus controlled, by respondent, the Council of Unit Owners. *See* Md.Code (1974, 2003 Repl.Vol.), § 11–109(e) of the Real Property Article (stating that "[a] unit owner may not have any right, title, or interest in any property owned by the council of unit owners other than as a holder of a percentage interest in common expenses and common profits appurtenant to his unit."). Only the unanimous written consent of all unit owners could have changed parking space number 32 from a general common element to a limited common element. There is no evidence that any such consents were ever given.

■ In *Alpert v. Le'Lisa Condominium,* 107 Md.App. 239, 667 A.2d 947 (1995), the Court of Special Appeals had before it a case similar to the one now before this Court. In *Alpert,* the intermediate appellate court upheld a nonunanimous decision of the condominium owners that passed a rule and amended the bylaws by assigning exclusive parking privileges to certain parking spaces.[15] In that Court's later decision in *Sea Watch*

---

**15.** On their appeal to the Court of Special Appeals, the Alperts raised an argument that, in many ways, resembles respondent's argument in the case *sub judice:*

*Stores v. Council of Unit Owners*, 115 Md.App. 5, 691 A.2d 750 (1997), however, the intermediate appellate court, acknowledging this Court's holding in *Ridgely*, stated that *"Alpert* and the Court of Appeals's *Ridgely* are plainly inconsistent. The Court of Appeals has clearly stated . . . that what was done in *Alpert* cannot be done." *Id.* at 25, 691 A.2d at 759. The *Sea Watch* decision correctly interpreted this Court's holding in *Ridgely,* a holding that we reiterate now—there cannot be a redesignation of common elements without the unanimous written consent of all the unit owners of a condominium.

Lastly, the deed by which petitioner took title to Unit 505, dated December 28, 1984, makes no mention of petitioner acquiring an exclusive interest in parking space number 32. The deed *did* convey unto petitioner a condominium unit subject to the Declaration and Plats referred to therein, and specifically stated, in pertinent part, as follows:

"THAT FOR AND IN CONSIDERATION of the sum of ONE HUNDRED FIVE THOUSAND and 00/100ths DOLLARS ($105, 000.00), and other good, valuable and sufficient consideration, receipt of which is hereby acknowledged, the said Grantors do hereby grant and convey unto HAROLD CLAUS JURGENSEN, his personal representatives and assigns, all the following described property:

"ALL that lot of ground situate in the Town of Ocean City, Worcester County, Maryland, and described as follows, that is to say: Unit Number 505, in THE NEW PHOENIX ATLANTIC CONDOMINIUM, a condominium

---

"[The Alperts] argue that Le'Lisa does not have the authority to designate specific parking spaces for the exclusive use of individual unit owners without amending the declaration by unanimous consent of all unit owners. . . . The Alperts further argue that to do so would encroach on each tenant's right to access and possession of the common elements, thereby prejudicing the rights of other tenants without each tenant's consent."
*Alpert,* 107 Md.App. at 246, 667 A.2d at 951 (alteration added).
Respondent, The Council of Unit Owners, in the case before us, is fundamentally arguing the same thing, *i.e.,* the conversion of a general common element area into a limited common element area without the unanimous consent of all unit owners is prohibited.

project according to the Declaration dated December 5, 1974, and recorded in Liber F.W.H. No. 466, Folio 624, et seq., and The Master Plats recorded with the Declaration in the Plat Book F.W.H. No. 48, Folios 4 through 14, inclusive, among the Land Records of Worcester County, Maryland, together with the use and enjoyment of the Limited Common Elements appurtenant thereto, *as set forth in said Declaration,* and together with the undivided 2.588% interest in the General and Limited Common Elements declared in said Declaration to be an appurtenance to the above described unit; and BEING all and the same property conveyed unto Grantors by Deed dated May 4, 1981, and recorded among the aforesaid Land Records in Liber F.W.H. No. 757, Folio 346.

"REFERENCE to the preceding deed and plat and to all references therein contained is hereby made for a more particular description of the property hereby conveyed."[16] (emphasis added).

Because parking space number 32 cannot be considered a limited common element, as it was not designated as such in the Condominium Declaration or Plats and Plans, or any amendment thereto, all that was conveyed to petitioner on December 28, 1984 was what his predecessors in title had, a 2.588% interest in the area underlying the parking space, a general common element, and nothing more. Petitioner has no exclusive rights relating to the parking space pursuant to the Maryland Condominium Act.

### B. Easement by Prescription

Petitioner claims that, notwithstanding the authority of the Maryland Condominium Act and the plain language of the Condominium Declaration, he has acquired the sole rights to parking space number 32 under the theory of easement by prescription. An easement is "a nonpossessory interest in the real property of another." *Boucher v. Boyer,* 301

---

16. The deeds to petitioner's predecessors in title contained the same, or similar language.

Md. 679, 688, 484 A.2d 630, 635 (1984) (citing *Condry v. Laurie,* 184 Md. 317, 320, 41 A.2d 66, 68 (1945)). An easement can be created expressly or by implication. *Boucher,* 301 Md. at 688, 484 A.2d at 635. One type of easement by implication is an easement by prescription, which arises when "a party makes an adverse, exclusive, and uninterrupted use of another's real property for twenty years." *Kirby v. Hook,* 347 Md. 380, 392, 701 A.2d 397, 403 (1997) [17]. *See also Condry,* 184 Md. at 321, 41 A.2d at 68; *Cox v. Forrest,* 60 Md. 74, 79 (1883). For the party's use to be considered adverse, it must occur without license or permission. *Kirby,* 347 Md. at 392, 701 A.2d at 403; *Dalton v. Real Estate and Improvement Company of Baltimore City,* 201 Md. 34, 41, 92 A.2d 585, 588 (1952). We have held that, "[a]s a general rule, permissive use can never ripen into a prescriptive easement." *Kirby,* 347 Md. at 393, 701 A.2d at 404; *see also Phillips v. Phillips,* 215 Md. 28, 33, 135 A.2d 849, 851 (1957). It is with these characteristics of a prescriptive easement in mind that we turn to petitioner's claim that he has acquired the rights to parking space number 32 by such a method.

First, petitioner cannot be said to have acquired an exclusive interest in the area underlying parking space number 32 because petitioner's use of the parking space was not adverse to the interests of respondent. Petitioner had permission from the Condominium (and its developer) to use that parking space and, accordingly, petitioner had a license. This does not meet the definition of adverse as is required in a successful claim of easement by prescription.[18] While petition-

---

**17.** Because a condominium is a subdivision of land, the general law as to the use of real property, which includes that relating to easements by prescription, normally applies, unless changed by statute.

**18.** We note that when cases have arisen concerning an adverse possession claim between tenants in common, a claim that is in theory very similar in nature to the one before us now, this Court has long held that there must be some overt act which can amount to an ouster, or notice must be given to any co-tenant that the possession is adverse. *See Van Bibber v. Frazier,* 17 Md. 436, 451 (1861). As this Court stated in *Van Bibber,* "[o]ne of the elements of title by adverse possession is, that it is

er argues that, under *Kirby*, adverse use is presumed "[w]hen a person has used a right of way openly, continuously, and without explanation for twenty years," such a presumption is thoroughly destroyed when it can be shown that the party claiming easement by prescription was given permission by the Condominium to use the contested area. A use by express or implied permission normally cannot ripen into an easement by prescription.

 Furthermore, petitioner cannot establish that his use of the parking space meets the twenty year statutory requirement of an easement by prescription. Petitioner purchased Unit 505 on December 28, 1984, a period of time that, by itself, does not meet the twenty year minimum. As petitioner correctly points out, however, "we have consistently held 'that possessions under color of title of the successive predecessors in title may be tacked to complete the twenty year statutory period.'" *Kirby*, 347 Md. at 395, 701 A.2d at 405 (quoting *Clayton v. Jensen*, 240 Md. 337, 344, 214 A.2d 154, 159 (1965)).

Because the area upon which the parking space was laid out was a general common element of the Condominium, neither petitioner nor his predecessors in title had possession of parking space number 32 under separate color of title. They had at least, and at most, a license to use the space. Therefore, there can be no tacking of time to meet the twenty year statutory minimum of an easement by prescription.

---

a *hostile* invasion of another's rights. Some positive act must show it." *Id.* (citations omitted); *see also Ross v. Phillips*, 148 Md. 165, 167, 129 A. 21, 22 (1925) (stating that "[e]ven though one tenant may have been in sole possession of the land ... for more than twenty years, this does not take away the other's right unless he was actually put out, or his title in common uniformly denied.") The same type of "positive act" would have to occur in order for a condominium unit owner to show the required hostility in an easement by prescription context relating to a general common element parking space, even if prescriptive rights in general common elements of condominium real property can arise despite the strictures of the Maryland Condominium Act. *See, e.g.,* 11–107(a) of the Real Property Article, *supra* (prohibiting partition of general common elements of condominiums).

### C. Estoppel

Petitioner next contends that he should have been allowed to retain parking space number 32 because both he and his predecessors in title relied on representations and actions of the developer and board of directors of the Condominium that allowed the creation and exclusive use of the parking space for the benefit of Unit 505. Petitioner argues that because of this reliance, respondent is estopped from asserting its rights under both the recorded Condominium Declaration and The Maryland Condominium Act to alter the use of the parking space to which petitioner claims exclusive use.

As this Court explained in the case of *Cunninghame v. Cunninghame*, 364 Md. 266, 772 A.2d 1188 (2001), the definition of equitable estoppel that has been consistently applied in Maryland is as follows:

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

*Id.* at 289, 772 A.2d at 1201 (citing 3 J. Pomeroy, *Equity Jurisprudence*, § 804 (5th ed.1941)). Even if estoppel were to be applicable where a statute specifically requires the unanimous written consent of all unit owners in order to redesignate a general common element, as in this case, and were to be applicable where another statute forbids the partition of general common elements absent the unanimous consent of all unit owners, in order for petitioner to assert a valid claim of equitable estoppel, he normally would have to show that respondent made a representation concerning his use of parking space number 32 and that he detrimentally relied on that representation. *Cunninghame*, 364 Md. at 290, 772 A.2d at 1202; *Dahl v. Brunswick Corp.*, 277 Md. 471, 487, 356 A.2d

221, 230–31 (1976); *Savonis v. Burke,* 241 Md. 316, 319, 216 A.2d 521, 523 (1966). As we explained in *Cunninghame:*

"Although wrongful or unconscionable conduct is generally an element of estoppel, an estoppel may arise even where there is no intent to mislead, if the actions of one party cause a prejudicial change in the conduct of another. *Bean v. Steuart Petroleum,* 244 Md. 459, 224 A.2d 295 (1966); *Travelers v. Nationwide,* 244 Md. 401, 224 A.2d 285 (1966); *Alvey v. Alvey,* 220 Md. 571, 155 A.2d 491 (1959). Of course, the party who relies on an estoppel has the burden of proving the facts that create it. *Doub v. Mason,* 2 Md. 380, 406 (1852); *First Nat. Bank v. Mayor and City Council,* 27 F.Supp. 444, 454 (D.Md.1939)."

*Cunninghame,* 364 Md. at 289, 772 A.2d at 1202.

 This Court has also held that a claim of equitable estoppel, with respect to the title of real property, can only succeed where:

"'... the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. *Where the condition of the title is known to both parties or both have the same means of ascertaining the truth, there can be no estoppel.*'"

*Mountain Lake Park Ass'n v. Shartzer,* 83 Md. 10, 13–14, 34 A. 536, 537 (1896) (quoting *Brant v. Virginia Coal & Iron Co.,* 93 U.S. 326, 337, 23 L.Ed. 927, 929–30 (1876)) (emphasis added).

 In the case *sub judice,* petitioner had the means of acquiring the knowledge that parking space number 32 was, and still is, part of the general common elements of the Condominium. Petitioner purchased Unit 505 subject to the terms and conditions found in the Condominium's recorded Declaration and Plats, under which, as stated before, the area later described as parking space number 32 is classified as a general common element. There was never an amendment to the Declaration and Plats to establish parking space number

32 as anything other than a general common element of the Condominium. The Condominium documents were readily available among the Land Records for petitioner, as well as respondent, to examine.

We hold that none of respondent's representations regarding parking space number 32 warrant the application of equitable estoppel to limit respondent's rights in respect to its alteration of the disputed parking space. Moreover, the applicable statutes require the unanimous consent of all owners in order for the entity to make any binding representations that would estop it from asserting full rights in the general common elements of the condominium.

We hold that respondent, by its board of directors, had the authority to reconfigure the Condominium general common element parking area. None of respondent's actions can be said to have made petitioner reasonably believe that parking space number 32 would remain permanently unchanged in its dimensions, or that the area that parking space number 32 formerly occupied would always be for the exclusive use of the owner of Unit 505. Because the reconfiguration did not alter petitioner's rights in the general common elements of the Condominium, as he still owned a 2.588% interest in the general common elements, we do not find that it interfered with petitioner's property rights as the owner of Unit 505. The reconfiguration of the parking area, which led to parking space number 32 being made smaller so as to be similar in size to the other parking spaces, even if it frustrated petitioner's investment expectations, does not warrant application of estoppel principles.

Judge Eschenburg of the Circuit Court for Worcester County properly granted the respective Motions to Dismiss and Motions for Summary Judgment.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**